Carlos J. Rosario, State Bar # 280678
    Email: carlitosrosario@gmail.com
Anthony W. Trujillo, State Bar # 248860
    Email: atrujillo@trujillowinnick.com
Alexander H. Winnick, State Bar # 239430
    Email: awinnick@trujillowinnick.com
TRUJILLO & WINNICK, LLP
2919½ Main Street
Santa Monica, CA 90405
Telephone:   310.210.9302
Facsimile:   310.921.5616

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA- SAN FRANCISCO DIVISION

| | |
|---|---|
| NIKO VUORI,<br><br>    Plaintiff,<br><br>vs.<br><br>GRASSHOPPER CAPITAL LLC, ARI LEWIS, AND SAGAR RAMBHIA<br><br>    Defendants. | CASE NO: 3:17-CV-06362<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**<br><br>Hearing Date: February 16, 2018<br>Time: 10:30 AM<br>Courtroom: G<br><br>Magistrate Judge Joseph C. Spero<br><br>Case Filed:   October 31, 2017<br>Trial Date:   none |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

# **TABLE OF CONTENTS**

I.  SUMMARY OF REPLY ................................................................................... 1

II. PLAINTIFF FAILED TO MEET HIS BURDEN OF ESTABLISHING PERSONAL JURISDICTION ................................................................................ 2

    A.  Plaintiff's Residence In California Does Not Establish Minimum Contacts. 2

    B.  Plaintiff's Claim That He Solicited Investors In California Fails The First Two Prongs And Would Nevertheless Constitute Illegal Activity By Plaintiff 3

    C.  Plaintiff's Claim That He Provided Advisory Services To Defendants Does Not Establish Minimum Contacts ............................................................. 6

    D.  Plaintiff's Tort Claims Do Not Establish Minimum Contacts ...................... 7

    E.  Defendant Carried Their Burden To Show Personal Jurisdiction Would Offend Traditional Notions Of Fair Play And Substantial Justice ............... 8

    F.  Plaintiff Fails To Meet His Burden That This Court Can Exercise Personal Jurisdiction Over The Individual Defendants Lewis and Rambhia ........... 10

III. PLAINTIFF FAILED TO MEET HIS BURDEN OF ESTABLISHING PROPER VENUE ............................................................................................................. 10

IV. DEFENDANTS HAVE MET THEIR BURDEN IN SHOWING THAT 28 U.S.C. § 1404 SUPPORTS TRANSFER ........................................................................ 11

    A.  Convenience of Witnesses ....................................................................... 12

    B.  Convenience of Parties ............................................................................. 13

    C.  Other Factors ............................................................................................ 14

V.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*A.J. Industries v. U.S. District Court*, 503 F.2d 384, 386–87 (9th Cir.1974) .................. 12

*Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F.Supp.2d 957, 960 (C.D. Cal. 2005) 10

*Burger King Corp. v. Rudzewicz* 471 U.S. 462, 475 fn. 18 (1985) ................................ 2

*Calder v. Jones*, 465 U.S. 783, 790 (1984) ................................................................. 10

*Casualty Assurance Risk Ins. Brokerage Co. v. Dillon* 976 F2d 596, 601 (9th Cir. 1992) 3

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F3d 273, 279 (4th Cir. 2009) .......... 6

*Davis v. Metro Productions, Inc.*, 885 F.2d 515, 521 (9th Cir. 1989) ............................ 10

*Denver & Rio Grande Western Ry. Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 560 (1967) ................................................................................................ 12

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) ...................................... 10

*Evans v. Riverside International Raceway*, 237 Cal.App.2d 666, 674 (1965) ................. 5

*Helicopteros Nacionales de Colombia, S.A. v. Hall* 466 U.S. 408, 416-417 (1984)......... 7

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) .............................. 12

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000) ............................... 14

*Lawler v. Tarallo*, 2013 WL 5755685 at *3 (N.D. Cal. 2013) ........................................ 11

*Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*, 715 F.3d 716, 742 (9th Cir. 2013) ......................................................................... 2, 4

*Lou v. Belzberg*, 834 F.2d 730,739 (9th Cir. 1986) ..................................................... 14

*Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 70, 72 (1995) ....................... 8

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) ................................. 5

*Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) .......................................... 6

*Roth v. Marquez*, 942 F2d 617, 622 (9th Cir. 1991) ..................................................... 7

*Saleh, et al. v. Titan Corporation, et al.*, 361 F.Supp.2d 1152, 1162 (C.D. Cal. 2005) .. 13

*Smith v. Antler Insanity, LLC*, 58 F.Supp.3d 716, 722 (S.D. MS 2014) ......................... 10

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ................................... 9

*uBID, Inc. v. GoDaddy Group, Inc.*, 623 F3d 421, 431 (7th Cir. 2010) ........................... 6

*Walden v. Fiore*, 134 S.Ct. 1115, 1123-1125 (2014) ................................................. 3, 7

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678-79 (9th Cir. 2012) 7

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 145 F.Supp.2d 1168 (2001) ... 9

**Statutes**

15 U.S.C. § 78cc .................................................................................................................. 5

15 U.S.C. § 78o ................................................................................................................... 5

28 U.S.C. § 1404 ........................................................................................................... 2, 11

28 U.S.C. § 1406 ............................................................................................................... 11

Cal.Civ.Code § 3344 ........................................................................................................... 8

## I.    SUMMARY OF REPLY

Plaintiff cannot meet his burden of establishing personal jurisdiction in this case because he cannot establish either of the first two prongs required to establish minimum contacts- purposeful availment and claims arising from activity in the forum.  Plaintiff's residence alone does not establish personal jurisdiction, and there is no allegation that Defendants contacted Plaintiff because he is in California.  Plaintiff also improperly attempts to create a new argument that he contracted to solicit investors for Grasshopper- an allegation not made in the Complaint and one that would create an illegal contract because Plaintiff is not a broker.  In addition, Plaintiff's alleged advisory services do not create minimum contacts necessary for personal jurisdiction.  No meaningful link exists between those services and California and this Court must look to the location and activities of Defendants, not Plaintiff.  Plaintiff's tort claims for misappropriation of likeness will ultimately fail as Plaintiff admits in his Opposition he consented to the distribution of the communication, and cannot meet his burden of establishing minimum contacts therein.  Plaintiff further fails to meet his burden by not making any showing that the individual Defendants, Lewis and Rambhia, had their own minimum contacts with the forum, outside of their roles of members of Grasshopper.

Nevertheless, Defendants presented a compelling case in their Motion and in this Reply that the exercise of personal jurisdiction would create severe hardships for each of the Defendants, and no consequential allegations or evidence are made by Plaintiff that he in turn would suffer any hardship if he were required to file this case in the proper district.

In the alternative, the Court should dismiss this action for improper venue.  As the Court looks at the alleged actions of Defendants as opposed to Plaintiff's in making its determination, it is indisputable that all of the alleged activities occurred outside of the Northern District.  The parties' communications were done strictly over the phone and through emails from Jericho, New York and Cleveland, Ohio, home to Defendants.  Plaintiff himself was not restricted to perform in the Northern District and could have performed his anticipated services anywhere.

1

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

Finally, even if the Court does find personal jurisdiction against each Defendant and that venue in this District is proper, it would offend notions of fair play and substantial justice under 28 U.S.C. § 1404 for this Court to not transfer this matter out of this District and to the Eastern District of New York, where this case should have been filed. The convenience of both the witnesses and the parties heavily favor transfer, and any other factors this Court would consider do not support maintaining this venue.

## II.  PLAINTIFF FAILED TO MEET HIS BURDEN OF ESTABLISHING PERSONAL JURISDICTION

Here, Plaintiff has failed to set forth a case for establishing personal jurisdiction. As discussed in Defendants' Memorandum of Points and Authorities, the Court does not have personal jurisdiction under the Ninth Circuit's three-prong test. *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*, 715 F.3d 716, 742 (9th Cir. 2013).

Plaintiff begins his brief with five bullet-points of Defendants' alleged connections with the state. However, none of these alleged connections establish minimum contacts, and therefore none can defeat Defendant's motion.

### A. Plaintiff's Residence In California Does Not Establish Minimum Contacts

In his first point, Plaintiff alleges that Defendants reached out to Plaintiff "who resides in the Northern District of California" to solicit his services as an advisor. (Opposition, pg. 1, lines 6-9). This allegation is purposefully misleading. In actuality, Defendant Lewis met Plaintiff in Las Vegas, Nevada in 2015, where the two struck up a relationship. The two discussed the gaming industry, and realized they had similar interests in gaming and entrepreneurship. There, in Las Vegas, Plaintiff and Defendant Lewis realized that both had founded their own gaming companies. (Lewis Decl. [Reply], ¶ 2).

Plaintiff's "residence in the Northern District" for the purposes of this case nothing more than an "attenuated" affiliation with the forum with regard to the allegations made in the Complaint. See *Burger King Corp. v. Rudzewicz* 471 U.S. 462, 475 fn. 18 (1985). It is not

2

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

enough that Plaintiff resides in the forum state and may feel effects there. Defendant must direct the activity to the forum state.[1]  *Walden v. Fiore*, 134 S.Ct. 1115, 1123-1125 (2014); *Casualty Assurance Risk Ins. Brokerage Co. v. Dillon* 976 F2d 596, 601 (9th Cir. 1992).

It is also important to note that Plaintiff does not actually allege that Defendants reached out to Plaintiff *because* he resides in the Northern District (Opposition, pg. 1, lines 6-9 ("*Defendants reached out to Plaintiff Niko Vuori, who resides in the Northern District*")). Based on the anticipated advisory agreement, where Plaintiff lived is irrelevant as his advisory services were to be done over email and the phone. (Lewis Decl. [Reply], ¶ 4).

### B. Plaintiff's Claim That He Solicited Investors In California Fails The First Two Prongs And Would Nevertheless Constitute Illegal Activity By Plaintiff

The second, third, and fourth bullet-points alleged by Plaintiff in his Opposition refer to his new argument that Defendants sought to pay for Plaintiff's assistance to recruit raise money from Silicon Valley investors. This argument is a red herring and grossly misleading for several reasons. First, Plaintiff's Complaint does not allege that he entered into an agreement with Defendants to solicit money. Rather, Plaintiff alleges that the parties negotiated terms for an "advisor agreement" on May 15, 2017 in exchange for Plaintiff receiving 10% of the carry "to serve as an advisor". (Complaint, ¶ 42). Plaintiff alleges that Lewis "confirmed their agreement" on May 16, 2017, stating "We are good to go on the advisory deal" and that Lewis emailed his attorney, blind-copying Plaintiff, to explain the terms. (Complaint, ¶ 44). Plaintiff states Lewis outlines Plaintiff's role in a May 16, 2017 email- however that email does not make any mention of Plaintiff soliciting investors or of Plaintiff's connection to Silicon Valley investors. (Complaint,

---

[1] Courts will consider a plaintiff's residence in the forum state as one factor (if the injuries are suffered there). However, the "expressly aimed" requirement distinguishes cases where plaintiff fortuitously lives in the forum state with the conduct directed, e.g., to the nation as a whole, from those in which the intentional conduct is directed uniquely to the forum itself. Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 3-E ("Minimum Contacts" Doctrine) 3:172.3; see *Clemens v. McNamee* 615 F3d 374, 380 (5th Cir. 2010)- defamatory statements made in New York to national publication about a Texas resident insufficient.

¶ 45 ["Lewis further explained that Vuori ••is going to help [the Fund]" by [e]valuating macroeconomic trends in the cryptocurrency market"; [h]elping us make buy and sell decisions on tokens"; [h]elping portfolio companies when we engage management teams"; '[w]hen we begin to expand. help[ing] us identify hiring needs"; "[e]motional support for the ups and downs of running a fund:·). The actual email, attached to the Declaration of Ari Lewis, confirms that Plaintiff's negotiated role::

> He [Plaintiff Vuori] is going to help us with:
> • Evaluating macroeconomic trends in the cryptocurrency market.
> • Helping us make buy and sell decisions on tokens
> • Helping portfolio companies when we engage management teams
> • When we begin to expand, help us identify hiring needs
> • Emotional support for the ups and downs of running a fund.

(Lewis Decl. [Reply], ¶ 2, Ex. 1).[2]

Plaintiff improperly attempts to create a new argument in his Opposition that he contracted with Defendants to *solicit* Silicon Valley investors in order to establish minimum contacts, despite the fact that the Complaint does not allege such an arrangement, and the May 16, 2017 email- which Plaintiff claims forms the alleged agreement- does not refer to (or allude to) any solicitation services whatsoever. There is also no reference that the parties contemplated contracting Plaintiff to contact bankers on behalf of the fund. Plaintiff should not be able manufacture a purposeful availment based on the unpled and controverted claim that he contracted to solicit investors in California.

Additionally, for Plaintiff to establish minimum contacts for the purpose of personal jurisdiction, he must show that his causes of action *arise out of* or *relate to* Defendant's forum-related activities. *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d at 742. Here, the alleged contract or promise does not relate to Defendants' California related activities because no party ever contemplated an agreement for Plaintiff to solicit investors in California. No allegation, *other*

---

[2] The May 16, 2017 email which Plaintiff claims confirms an agreement is conveniently omitted from the plethora of attachments to Plaintiff's declaration in support of his Opposition.

*than the phantom solicitation agreement*, purports to show any California related activity with regard to any of Plaintiff's causes of action.  The second prong under the minimum contract doctrine therefore fails, and, because each of the three prongs must be satisfied, personal jurisdiction cannot be established.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

Furthermore, even if the Court overlooks Plaintiff's pleading and the email purporting to show a contract, Plaintiff still cannot enforce a contract where he was to receive a percentage of the fund in exchange for soliciting investors.  Under both California and Federal law, a person cannot solicit investors in exchange for a percentage fee without a license.  California Corporations Code section 25210(a) provides that "[N]o broker-dealer shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless the broker-dealer has first applied for and secured from the commissioner a certificate, then in effect, authorizing that person to act in that capacity."  It is well settled in California that one acting as a securities broker must be licensed before it may recover agreed compensation for services rendered.  *Evans v. Riverside International Raceway*, 237 Cal.App.2d 666, 674 (1965).  Federal law, like that of California, also bars the collection of commissions for broker related activity without a license.  15 U.S.C. § 78o(a)(1) states: "It shall be unlawful for any broker or dealer…to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security…unless such broker or dealer is registered in accordance with subsection (b) of this section." Section 29(b) of the Exchange Act provides generally that any contract made in violation of the Exchange Act or any rule or regulation hereunder, as well as any contract whose performance would involve such a violation, is voidable.  15 U.S.C. § 78cc(b).  Plaintiff is not licensed, never claims in his Complaint or his Declaration that he is licensed, and Defendants were never aware of any license. (Lewis Decl. [Reply], ¶ 5).  Plaintiff- a "successful entrepreneur, investor and businessperson"- knew that he could not be paid to solicit funds or make

5

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

introductions in the hopes of finding investors without running afoul of both California and Federal law. (Complaint, ¶ 1).

Plaintiff's contention that Defendants "engaged with potential investors based in California, including many identified by Plaintiff" does not establish personal jurisdiction. Whether Plaintiff identified any California investors as he claims, he did so on his own accord- and not as part of any agreement with Plaintiff, as is evident from the parties' communications. Defendants' own alleged communications with California residents themselves do not establish minimum contacts as they do not relate to any of Plaintiff's causes of action, failing the second prong. Furthermore, any alleged emails or phone calls by any Defendant to potential California investors originated from New York, home to Defendants Grasshopper and Lewis. **Courts have consistently held that communications from one state to another via phone or email does not confer personal jurisdiction.** *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) [telephone and mail contacts are insufficient to satisfy the purposeful availment test]; see also, *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F3d 273, 279 (4th Cir. 2009) ["mere fact that emails, telephone calls, and faxes were employed does not, of itself, alter the minimum contacts analysis"]; also, *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F3d 421, 431 (7th Cir. 2010) ["a physical geographical nexus is simply less important in cases where the alleged harm occurred over the Internet"].

C. **Plaintiff's Claim That He Provided Advisory Services To Defendants Does Not Establish Minimum Contacts**

The fifth and final bullet-point stated by Plaintiff- that he provided advisory services to Defendants- also does not establish the requisite minimum contacts and therefore does not form the basis for personal jurisdiction. (Opposition, pg. 1, lines 19-21). This contention fails since the contract was intended to be performed in New York. First, the only alleged communications regarding Grasshopper between the parties occurred via email or phone. (Lewis Decl. [Motion], ¶ 13). The negotiations for the advisory contract were performed by Defendant Lewis in New

6

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

York. (Lewis Decl. [Motion], ¶ 5). The performance for the anticipated agreement was to be performed for Grasshopper's New York operations. (Lewis Decl. [Motion], ¶ 7). In determining minimum contacts, the Court looks to the activities of the Defendants, not the Plaintiff. Unilateral activity by plaintiff or other persons over whom the nonresident defendant has no control does not satisfy the "purposeful availment" requirement. *Helicopteros Nacionales de Colombia, S.A. v. Hall* 466 U.S. 408, 416-417 (1984); *Roth v. Marquez*, 942 F2d 617, 622 (9th Cir. 1991). Certainly, Plaintiff's anticipated advisory services- namely those described in the May 16, 2017 email[3]- were not directed at California residents; rather they were to be directed at Defendants, who are New York and Cleveland residents. (Complaint, ¶¶ 7, 8, 9).

The alleged advisory services form the sole basis of Plaintiff's claims, yet no meaningful link exists between those services and California. Where a nonresident defendant operates entirely outside the forum state, the mere fact that its acts "cause an effect" within the state, or even that such effect was "foreseeable," is not itself enough to support local personal jurisdiction. *Walden v. Fiore*, 134 S.Ct. at 1123 [jurisdictional inquiry focuses on defendant's own affiliations with state, not solely interactions with a party in the state]. Plaintiff cannot satisfy his burden to show that his anticipated advisory services were *expressly aimed* at California. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678-79 (9th Cir. 2012). As a result, the anticipated advisory services alleged by Plaintiff cannot create the minimum contacts necessary to establish personal jurisdiction.

### D. Plaintiff's Tort Claims Do Not Establish Minimum Contacts

Plaintiff's tort claims for misappropriation do not create personal jurisdiction over the

---

[3] Each of the anticipated advisory services outlined by Lewis in the May 16, 2017 email— "(1) Evaluating macroeconomic trends in the cryptocurrency market; (2) Helping us make buy and sell decisions on tokens; (3) Helping portfolio companies when we engage management teams; When we begin to expand, help us identify hiring needs; (4) Emotional support for the ups and downs of running a fund"— were for Grasshopper in New York. None of this work is alleged to have been done for any California resident.

7
**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

Defendants. Here Plaintiff claims that Defendants committed misappropriation when they sent a Grasshopper Powerpoint presentation containing Plaintiff's name and likeness to investors in the state. (Opposition, pg. 8, lines 23-24). Yet, in his Declaration, Plaintiff states that *he* in fact shared the Power Point presentation that touted his involvement as an advisor. (Vuori Decl. ¶ 4; ["*When I [contacted investors], I would typically share a PowerPoint presentation that Lewis and Rambhia had created that touted my involvement as an advisor*"]). He did so at his own behest and not as part of any agreement with Defendants.

Misappropriation of likeness under both common law and Civil Code section 3344 requires non-consensual use. *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 70, 72 (1995) (Lack of consent is an element of the plaintiff's prima facie case); Cal.Civ.Code § 3344(a). Plaintiff establishes in his Opposition that he consented to the use of his likeness. (Vuori Decl. ¶ 4). As a result, these claims have no basis in fact and Plaintiff cannot meet his burden of establishing minimum contacts with the State for these causes of action.

### E. Defendant Carried Their Burden To Show Personal Jurisdiction Would Offend Traditional Notions Of Fair Play And Substantial Justice

Defendants presented a compelling case in its Motion that the exercise of jurisdiction would be unreasonable and would not comport with fair play and substantial justice. There is no dispute that Grasshopper is a Delaware LLC with its principal place of business in Jericho, New York, or that Lewis and Rambhia are residents of New York and Cleveland, respectively. (Complaint, ¶ 7). Supported by Declarations, Defendants make a compelling showing of the hardship and unreasonableness in forcing them to litigate this matter in California. Grasshopper would be required to shut down its entire business because it cannot operate outside of New York, harming its investors. (Lewis Decl. [Motion], ¶ 8). Lewis has severe travel restrictions because of a serious illness. (Lewis Decl. [Motion], ¶ 10; see also, Lewis Decl. [Reply], ¶ 6, Exs. 2, 3). Rambhia would be required to suspend medical school. (Rambhia Decl. [Motion], ¶ 5). All Defendants would suffer financial burdens outlined in the Motion. (Motion, pgs. 9-10; Lewis

Decl. [Motion], ¶¶ 9; Rambhia Decl. [Motion], ¶ 6).

Plaintiff's argument in his Opposition that Defendants do not make a compelling case- stating that the litigation would only require their presence at trial only and they can do everything else telephonically- is nonsensical. Plaintiff's suggestion that Defendants should not be afforded the equal ability as Plaintiff to participate in and attend in hearings and depositions does itself offend traditional notions of fair play and substantial justice. Defendants' due process of rights are violated if they are placed at such a severe disadvantage. Plaintiff's reliance on *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 145 F.Supp.2d 1168 (2001) is misplaced and taken out of context by Plaintiff to support his outrageous position. In *Yahoo*, the district court stated that the defendants did not assert or make any factual showing of the severity of their burden "other than a generalized reference to the financial expenses". *Id.* at 1178. The *Yahoo* court also found that that case would likely be resolved largely if not entirely by dispositive motions addressing issues of law which do not require extensive fact discovery in this forum. *Id.* at 1177-78. Plaintiff makes no argument or showing that this would be the case in this matter. He ignores the location of witnesses identified in the Complaint and the Motion, and he generally avoids Defendants' factual showings of severe burdens.

Plaintiff himself would not be required to shut down his business if he is forced to litigate in a proper district. He would not suffer severe medical risks nor would he be required to put his future on hold. His absence would not negatively impact third parties. Plaintiff, unlike the Defendants, is a "successful entrepreneur, investor and businessperson with a record of success…" and therefore would not suffer as severe a financial burden. (Complaint, ¶ 1). The only hardship Plaintiff claims is a generic assertion that he has "responsibilities to [his] wife and young children and [his] work as a consultant." Where all other burdens and factors are equal, the burden on defendant in defending the action locally is likely to be decisive: "[T]he law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). Plaintiff makes no showing of his own hardship and makes no attempt to dispute those hardships claimed by Defendants.

9

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

### F. **Plaintiff Fails To Meet His Burden That This Court Can Exercise Personal Jurisdiction Over The Individual Defendants Lewis and Rambhia**

As stated in the Motion, the allegations in the Complaint show that Defendants Lewis and Rambhia's alleged acts forming the basis for the claims were done solely in their roles as managing members of Grasshopper. (Motion, pgs. 11-12). Plaintiff does not dispute that where a corporation (or LLC) and its officers are named as defendants, the proper course is to analyze minimum contacts for each defendant individually. (Opposition, pg. 12, lines 21-23). However, Plaintiff states that "[h]ere, Defendants have not made the argument that Lewis and Rambhia lacked minimum contacts" and only broadly claims, without any showing, that Lewis and Rambhia have extensive personal contacts. (Id. pgs 12-13, lines 25-2). Plaintiff ignores that it is *his* burden to establish personal jurisdiction. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Lewis and Rambhia never claim they are immune from personal jurisdiction because they are officers, only that they each lack minimum contacts. The mere fact that a corporation may be subject to local jurisdiction does not mean its nonresident officers, directors, agents and employees are suable locally as well. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 521 (9th Cir. 1989). Members of a LLC are not subject to personal jurisdiction in forum state simply because the LLC subject to jurisdiction there. *Smith v. Antler Insanity, LLC*, 58 F.Supp.3d 716, 722 (S.D. MS 2014). More must be shown. Plaintiff makes no argument or showing as to why this Court should disregard the corporate form, or how Lewis and Rambhia have their own minimum contacts with the forum outside of Grasshopper. He makes no separate purposeful availment argument against the individual Defendants. As stated in the Complaint and highlighted in the Motion, there is no reason for this Court to exercise personal jurisdiction over Lewis and Rambhia. (Motion, pg. 12-13, lines 9-3).

### III. **PLAINTIFF FAILED TO MEET HIS BURDEN OF ESTABLISHING PROPER VENUE**

Here, Plaintiff has the burden to show that venue is proper. *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F.Supp.2d 957, 960 (C.D. Cal. 2005). In its analysis, "the court should

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

generally focus on activities of the defendant and not the activities of plaintiff" when "determining whether events or omissions are sufficiently substantial to support venue under § 1391(a)(2)." *Lawler v. Tarallo*, 2013 WL 5755685 at *3 (N.D. Cal. 2013).

While Plaintiff generally asserts that the events in this District are substantial enough to make venue proper, he does not allege here that his solicitation of funds were a part of any alleged contract, but instead focuses only that his alleged advisory services. (Opposition, pg. 13, lines 13-14). Plaintiff's anticipated advisory services were to be provided to a New York company for its operations in New York. (Lewis Decl. [Motion], ¶ 7, 8). Any services were intended to benefit a New York fund, and were received and consummated in New York. Id. Defendants received emails from Plaintiff in New York, and Plaintiff based his advice on the fact that the fund was based in New York. (Lewis Decl. [Motion], ¶¶ 7, 8, 13). Focusing on the activities of the Defendants confirms that venue is not proper in the Northern District of California.

Moreover, Plaintiff was not obligated or tied to the Northern District in order to provide the anticipated advisory services. Plaintiff does not allege that he was and it would be illogical to assume that he was. The anticipated services outlined in Plaintiffs' Complaint and in the May 16, 2017 email could be performed anywhere. (Complaint, ¶ 45; Lewis Decl. [Reply], ¶ 4). The parties always anticipated that Plaintiff would provide these services remotely, via phone and email. (Lewis Decl. [Reply], ¶ 4). There is no connection to the Northern District except for Plaintiff's current and unbound location. No sufficiently substantial events occurred in the Northern District.

Therefore, Defendants respectfully submit that the Court dismiss the instant action for improper venue pursuant to 28 U.S.C. § 1406(a).

**IV. DEFENDANTS HAVE MET THEIR BURDEN IN SHOWING THAT 28 U.S.C. § 1404 SUPPORTS TRANSFER**

In the alternative, Defendant requests the Court use its discretion pursuant to 28 U.S.C. § 1404(a) to transfer this matter to the Eastern District of New York "[f]or the convenience of

11

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

parties and witnesses, in the interest of justice," and based on the individualized facts of this case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

### A. Convenience of Witnesses

The convenience of witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate. See, e.g., *Denver & Rio Grande Western Ry. Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses"); *A.J. Industries v. U.S. District Court*, 503 F.2d 384, 386–87 (9th Cir.1974) (discussing the importance and history of the convenience of witnesses in evaluating a § 1404 transfer).

Defendants provided evidence in its Motion that the convenience of witnesses weighs heavily in favor of transfer to the Eastern District of New York. David Rhodes is identified by Plaintiff in the Complaint as an advisor to Grasshopper (the same position claimed by Plaintiff) and a party to the communications between Plaintiff and Defendants. Mr. Rhodes, who lives in New York, provides a declaration in support of the Motion to Transfer, stating that he is the primary caregiver for his 92-year-old mother and 86-year-old father, who require close daily attention. He states that having to travel to California for this case would adversely impact the continuity and quality of their care. (Rhodes Decl. [Motion], ¶ 5).

Plaintiff, on the other hand, provides <u>no evidence</u> of the existence of any inconvenience to any witnesses if this matter were transferred to the Eastern District of New York. He relies solely on speculation as to his belief of the location of potential investors, none of whom are identified in the Complaint, and none of whom he states reside in the Northern District of California. (Vuori Decl. ¶ 7). Unlike Defendants, Plaintiff provides no supporting evidence in support of his Opposition that any person would be inconvenienced. Defendant also does not dispute that potential expert witnesses in this case reside in New York as opposed to California.

To the extent that Plaintiff cites his San Francisco attorneys as potential witnesses, this too is a red herring, as there is no indication that Plaintiff intends to waive attorney-client

12

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

privilege and produce his communications with his attorneys regarding Grasshopper for this case.

### B. Convenience of Parties

The convenience of the parties further supports this Court transferring this matter to the Eastern District of New York. As stated in the Motion, Defendant Lewis suffers from a serious illness that restricts his mobility. Defendant Rambhia would suffer a serious disruption to his standing in medical school. Furthermore, for any period Defendant Lewis is required to travel away from New York, Defendant Grasshopper would completely shut down and cease to do any business- causing financial harm to its investors and the company itself. (Motion, pgs. 17-19 [citations omitted]).

Plaintiff does not address the significant inconvenience to Defendants Lewis or Grasshopper. Instead, Plaintiff focuses strictly on the convenience of Defendant Rambhia, who lives in Cleveland. Plaintiff argues that "it makes no sense to suggest that travel from Cleveland to San Francisco is too great a burden but travel to New York is not." (Opposition, pg. 16, fm. 12). This argument defies reality. A flight from Cleveland to New York is approximately one hour and forty minutes (1:40). A flight from Cleveland to San Francisco is five hours, 35 minutes (5:35). If Defendant Rambhia is required to appear in New York, he can conceivably make the back and forth trip in three and a half (3:30) hours. (Lewis Decl. [Reply], ¶ 7). Requiring Rambhia to travel to San Francisco and back to Cleveland for school would require more than ten hours of flight time.

In addition, the "sheer weight of the numbers"- given that two of three Defendants reside in the Eastern District of New York and only Plaintiff resides in California- is also considered in determining convenience. *Saleh, et al. v. Titan Corporation, et al.*, 361 F.Supp.2d 1152, 1162 (C.D. Cal. 2005). Plaintiff argues that transfer is not justified on this basis alone, but Defendants do not argue only this point, and Plaintiff does not dispute that this is indeed a factor for the Court to consider.

13

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

In regard to his own convenience, Plaintiff merely states that he elected to sue in the Northern District of California "because it is significantly more convenient for me to litigate here. [He has] responsibilities to [his] wife and young children and [his] work as a consultant for several San Francisco based startups requires [his] regular presence in the Bay Area." Plaintiff fails to provide any elaboration as to why he needs to litigate this matter here. Unlike Defendant Lewis, there is no claim of risk to anyone's health. Unlike Defendant Rambhia, there is no claim of risk to anyone's professional schooling. Plaintiff's self-serving statement is further unsupported by any evidence or explanation.

Furthermore, Plaintiff's claim that he needs to remain in California because of his consultant work is also unsupported. He provides no evidentiary support that any company needs his presence in the Northern District. He does not identify any company he consults for, if any exist. In contrast, Plaintiff claims that he was an advisor to Grasshopper, based in New York and provided services for its New York operations. Plaintiff provides no additional argument as to why litigating this matter in the Eastern District of New York would be inconvenient to him, let alone more inconvenient than it would be to Grasshopper, Lewis and Rambhia.

The convenience-of-parties factor weighs heavily in favor of Defendants. It would be a substantial injustice if this Court determines that Lewis' health, Rambhia's future, and Grasshopper's investors are secondary to Plaintiff's unsupported claim of *responsibilities* to his wife and children.

### C. Other Factors

The Court should also consider other factors in determining a 1404 motion. See, *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000). "[C]ourts must consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action." *Lou v. Belzberg*, 834 F.2d 730,739 (9th Cir. 1986) [citation omitted]. As discussed above, the contacts do not meet the standard for minimum contacts for the purpose of personal jurisdiction. The Court may also consider California's interest in the litigation. This factor is at

14

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**

best neutral as Plaintiff does not dispute Eastern District of New York's interest in adjudicating cases regarding companies that operate in New York. Moreover, a substantial number of potential witnesses identified in the Complaint reside in the East Coast. (Motion, pg. 18-19, lines 24-11). All remaining factors are either neutral or irrelevant. The interests of justice are best served if this case is transferred to the Eastern District of New York in the event the Court does not grant Defendants' Motions to Dismiss for lack of personal jurisdiction or improper venue.

## V. CONCLUSION

As stated above and in Plaintiff's Motion, this Court lacks personal jurisdiction over Defendants Grasshopper, Lewis and Rambhia. Plaintiff should not be entitled to generate new arguments and claims in his Opposition in order to establish minimum contacts that do not exist. Furthermore, Plaintiff has failed in his burden to establish that venue is proper in this District and fails to address that the Court focuses on the activity of Defendants and not Plaintiff. In the alternative, if the Court does not dismiss this case for lack of lack of personal jurisdiction, the Court should either dismiss the case for lack of proper venue under or transfer the case to the Eastern District of New York for the reasons stated above.

Dated: December 13, 2017

Respectfully submitted,
TRUJILLO & WINNICK, LLP

By:      /s/ Carlos J. Rosario      .
Carlos J. Rosario
Attorney for Defendants

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THE CASE TO THE EASTERN DISTRICT OF NEW YORK**