UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIKO VUORI,

         Plaintiff,

    v.

GRASSHOPPER CAPITAL LLC, et al.,

         Defendants.

Case No. 17-cv-06362-JCS

**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND DENYING MOTION TO TRANSFER VENUE**

Re: Dkt. No. 16

## I.    INTRODUCTION

Plaintiff Niko Vuori brings this action alleging breach of contract and misappropriation of likeness claims against Defendants Grasshopper Capital LLC ("Grasshopper"), Ari Lewis, and Sagar Rambhia. Defendants move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), asserting that they do not have sufficient minimum contacts with California. Defendants also move for dismissal in accordance with Federal Rule of Civil Procedure 12(b)(3), contending that venue is improper in this District. In the alternative, Defendants move to transfer venue to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1406(a). The Court held a hearing on February 16, 2018. For the reasons stated below, Defendants' Motion is DENIED.[1]

## II.    BACKGROUND

### A.    Vuori's Complaint

Vuori alleges that he is a "successful entrepreneur and investor" who has garnered a "strong reputation in Silicon Valley and beyond for identifying and developing cutting-edge technologies." Complaint (dkt. 1) ¶¶ 6, 18. He has launched startup companies, worked as senior

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

executive at Zynga, Inc., and currently serves as an advisor to startup companies in the Bay Area. *Id.* ¶¶ 15–17, 19.  He resides in Piedmont, California.  *Id.* ¶ 6.  Vuori alleges that Lewis and Rambhia are cryptocurrency investors from Jericho, New York, and that they created Grasshopper to operate a cryptocurrency fund, namely Grasshopper Capital Fund I LP (the "Fund"), which was "seeded primarily with the profits from their own previous investments." *Id.* ¶¶ 25–26, 30–31. Adam Collins, Lewis's classmate at Case Western Reserve University, has also assisted with Grasshopper.  *Id.* ¶ 30.  Vuori alleges that Grasshopper is a limited liability company organized under the laws of Delaware with its principal place of business in Jericho, New York, and that Lewis and Rambhia are the company's "sole and controlling members." *Id.* ¶ 7.  Vuori alleges that Lewis lives in Jericho, New York, and serves as Managing Member of Grasshopper.  *Id.* ¶ 8. He further alleges that "[i]n the course of his work for Grasshopper, Lewis traveled to San Francisco to seek advice from Vuori and solicit investments from persons residing in the district, trading on Vuori's name and reputation." *Id.*  Rambhia lives in Cleveland, Ohio, where he is currently enrolled at Case Western Reserve University School of Medicine and also serves as a Managing Member of Grasshopper.  *Id.* ¶ 9, 29.

Vuori alleges that he met Lewis in April 2015 and that Lewis later wrote to Vuori on May 2, 2017, "with Rambhia copied, to reintroduce himself and explain that he and Rambhia had 'decided to go full-time and raise a digital currency fund.'" *Id.* ¶ 34 (quoting an email sent by Lewis to Vuori).  Vuori alleges that Lewis indicated that he and Rambhia were interested in setting up an advisory group.  *Id.* ¶ 38.  According to Vuori, Lewis and Rambhia sought an advisor who is "'down to earth'" and trustworthy, and who could facilitate introductions to individual and institutional investors.  *Id.* ¶¶ 39–40 (quoting correspondence).  Vuori alleges that he and Lewis agreed during a May 15, 2017 phone call "on the previously discussed scope of work, including Defendants' ability to advertise Vuori as an advisor in order to boost Defendants' credibility, access to Vuori's fundraising network, and Vuori's general advice on Fund operation and investments." *Id.* ¶ 42.  With respect to compensation, Vuori alleges that: (1) Lewis "suggested that Vuori receive 5% of Grasshopper's carry"; (2) "Vuori countered by requesting 10% of the carry to serve as an advisor"; and (3) Lewis accepted Vuori's counterproposal of 10% of the carry

United States District Court
Northern District of California

United States District Court
Northern District of California

1   in exchange for serving as an advisor.  *Id.* ¶ 42 (quoting a conversation by phone).

2       Vuori alleges that he asked Lewis to "memorialize their agreement in an e-mail" because

3   Lewis had previously informed Vuori that it would take "a number of weeks or months" to draw

4   up formal paper work.  *Id.* ¶ 42.  According to Vuori, Lewis sent Grasshopper's transactional

5   attorney, Bart Mallon, an email on May 16, 2017 to inform him that Vuori would be serving as an

6   advisor for Grasshopper in exchange for 10% of the fund's carry.  *Id.* ¶ 45.  Lewis elaborated on

7   the nature of Vuori's role as an advisor, indicating that Vuori "'is going to help [the Fund]' by

8   'evaluating macroeconomic trends in the cryptocurrency market'; '[h]elping us make buy and sell

9   decisions on tokens'; '[h]elping portfolio companies when we engage management teams';

10  '[w]hen we begin to expand, help[ing] us identify hiring needs'"; and by providing "'[e]motional

11  support for the ups and downs of running a fund.'"  *Id.* (quoting correspondence) (alterations in

12  original).  Earlier that same day, Lewis also replied to Vuori, stating that he had spoken with his

13  attorney and that they were "good to go on the advisory deal."  *Id.* ¶ 44 (quoting correspondence).

14  Vuori also alleges that Rambhia sent an email on May 18, 2017 in which Rambhia confirmed the

15  agreement discussed above.  *Id.* ¶ 46.

16      Vuori alleges that he dedicated approximately twenty percent of his time following the

17  agreement on May 15, 2017 through September 2017 on matters pertaining to Grasshopper.  *Id.*

18  ¶¶ 48–49.  According to Vuori, had he not been devoting his time to Grasshopper as an advisor, he

19  would have "dedicated his time and resources to new investments and ventures" in addition to his

20  other commitments to serve as an advisor.  *Id.* ¶ 49.

21      Vuori alleges that Defendants began using Vuori's name, likeness, and reputation to

22  "bolster the credibility and prominence of the Fund."  *Id.* ¶ 50.  According to Vuori, Lewis listed

23  Vuori as an advisor to Grasshopper on AngelList, which is "the industry's leading startup funding

24  website."  *Id.* ¶ 51.  Additionally, Defendants named Vuori as an advisor in their pitch deck and

25  provided information about his prior work experience, including: (1) Vuori's work as a senior

26  executive at Zynga; (2) Vuori's role as a founder of Rocket Games; and (3) the fact that Rocket

27  Games was acquired for up to $170 million.  *Id.* ¶ 52.  Vuori further alleges that Lewis wrote to

28  Vuori in an email that Vuori's work as an advisor was one of the "3 key stats that we think are key

3

to the initial email pitch." *Id.* ¶ 53 (quoting correspondence).  According to Vuori, Defendants "often made reference in their solicitation e-mails to Vuori's ongoing work as an advisor and Vuori's previous successes as an entrepreneur." *Id.* ¶ 54.  To illustrate how this practice was "immediately effective," Vuori alleges that, after a "prominent CEO" declined to answer an initial e-mail from Lewis, the CEO "promptly replied" after a second email from Lewis noted that Vuori was serving as an advisor to Grasshopper.  *Id.* ¶ 57.

Vuori also alleges that Vuori introduced Defendants to his network of potential investors between May and September of 2017 and that at least one of those investors pledged to invest in the Fund. *Id.* ¶¶ 58–59.  According to Vuori, Lewis sent Vuori an email, with Rambhia copied, in which Lewis sought to discuss matters pertaining to Grasshopper.  *Id.* ¶ 60.  One such topic was fundraising, as Lewis wrote that he "would like to discuss [Rambhia's] and my progress on raising money" as well as how to "plan to target [Vuori's] contacts."  *Id.*

Vuori alleges that Defendants sought advice from Vuori concerning various operational aspects of Grasshopper and that Grasshopper thrived during the time period in which Vuori served as an advisor.  *Id.* ¶¶ 65–74.  According to Vuori, Defendants repeatedly sought his input and feedback, and Vuori "continued to fulfill his role as advisor" by "exchanging e-mails, making himself available for calls, helping to make available his network of potential investors" and by providing "input on Grasshopper's operation processes, such as bookkeeping, IT, and trading." *Id.* ¶ 70.  During his time as an advisor, Vuori alleges that Grasshopper grew and "began to garner headlines." *Id.* ¶ 73.  In terms of growth, Vuori alleges that "Defendants have raised several million dollars in investments since May 15, 2017, when Vuori agreed to serve as an advisor to Defendants."  *Id.* ¶ 77.

Vuori alleges that Defendants refused to reduce their May 15, 2017 agreement with Vuori to a formal written contract and that Defendants repudiated the terms of the agreement on October 13, 2017.  *Id.* ¶ 84.  Vuori alleges that Lewis initially told him on May 22, 2017 that he would get an estimate as to how long it would take for Defendants' transactional attorneys to finish drafting formal papers for their agreement.  *Id.* ¶ 78.  According to Vuori, Lewis copied Rambhia when he provided Vuori numerous documents for his signature on August 9, 2017.  *Id.* ¶ 80.  These

documents included: (1) "a Side Letter indicating that Vuori would not be charged a management fee"; (2) "a Subscription Agreement"; (3) "a PPM/LPA"; and (4) "an Operating Agreement, which Lewis said 'indicates [Vuori has] a 10% economic right in the fund." *Id.* ¶ 80.  Vuori further alleges that "the drafts supplied by Lewis and Rambhia contained additional provisions that previously had not been discussed." *Id.*

Vuori alleges that he retained independent legal counsel to review the documents that Lewis had provided and that he worked with his independent legal counsel "consistently from August 21 through September 26 in an effort to formally document the May 15 agreement he had reached with Grasshopper." *Id.* ¶ 81.  During this time, Vuori alleges that he "made sure to keep Lewis updated" and that "Lewis indicated that Vuori's review of the documents did not pose a problem." *Id.* ¶ 82.  Vuori further alleges that he "sent Lewis a few questions and suggested edits to the relevant paperwork" on September 25, 2017. *Id.* ¶ 83.  According to Vuori, none of the edits "related to the terms of the parties' May 15 agreement," namely, "that Vuori was to receive 10% of the Fund's carry in exchange for serving as an advisor." *Id.*

Vuori alleges that Lewis, copying Rambhia, responded to Vuori on October 3, 2017.  *Id.* ¶ 84.  According to Vuori, Lewis wrote that he and Rambhia were "no longer able to offer incentivized 'advisory roles,' as circumstance has changed since when [Lewis and Rambhia] initially approached [Vuori] in May." *Id.*  Lewis continued by indicating that he, Rambhia, and Collins "would still love to have [Vuori] as a limited partner." *Id.*  Vuori responded on October 6, 2017 that Grasshopper had "'reneged on [its] agreement to make [Vuori] an advisor to the fund, with a 10% economic interest in the carry of the fund.'" *Id.* ¶ 85 (quoting correspondence).  Vuori also wrote that "the parties 'had been operating under this agreement, based on the services [Vuori has] been providing to the fund, and the assurances [Lewis] has been making to [Vuori],' especially '[Lewis's] email of May 16, 2017 to [Rambhia and Mallon].'" *Id.*  Vuori continued by writing that "'Grasshopper Capital has been highlighting in all its marketing materials and correspondence with prospective and existing investors that [Vuori is] in fact an advisor to Grasshopper Capital," as Vuori's name and likeness, and information about his prior work experience were "prominently featured in Grasshopper Capital materials." *Id.*  Vuori demanded

United States District Court
Northern District of California

that Defendants honor their May 15, 2017 agreement with him.  *Id.*

Vuori alleges that, in response to Vuori's October 3, 2017 email, Lewis and Vuori spoke via telephone at Lewis's suggestion on October 8, 2017.  *Id.* ¶ 86.  Vuori alleges that he "reiterated his demand that Lewis and Rambhia honor their agreement," and that "Lewis told Vuori that he would get back to him."  *Id.*  On October 12, 2017, Vuori alleges that "Lewis wrote Vuori but did not address any of the points raised in Vuori's October 6 e-mail."  *Id.* ¶ 87.  Lewis wrote to Vuori, with Rambhia copied, that "'[we] are all disappointed things didn't work out the way we had hoped.  As we move forward in different directions, we wish you success in your future endeavors.'"  *Id.*

Vuori asserts six claims against all Defendants: (1) breach of contract; (2) quantum meruit; (3) promissory estoppel; (4) unjust enrichment and quasi-contract; (5) common law misappropriation of likeness claim; and (6) commercial misappropriation of likeness under California Civil Code § 3344.

### B.  Evidentiary Record

#### 1.  Defendants' Evidence

Grasshopper is a Delaware limited liability company with its sole office in Jericho, New York, and all of its administrative functions, including trades, occur in that state.  Lewis Decl. (dkt. 16-1) ¶¶ 2, 3, 8; Rambhia Decl. (dkt. 16-2) ¶¶ 2, 3.  Grasshopper has no offices, business facilities, employees, registered agents, or documents in California.  Lewis Decl. ¶¶ 3, 6; Rambhia Decl. ¶ 3.  "Nearly all of Grasshopper's functions occur in New York."  Lewis Decl. ¶ 7. According to Lewis, security requires that "the *private keys* that enable Grasshopper to make trades cannot be transported," and the business would have to shut down for any period that he was required to travel to California for this case.  Lewis Decl. ¶ 8.  Lewis states that Grasshopper only negotiated with Vuori "from New York," and that "the negotiations took place over the phone or by email while [Lewis] was in New York."  *Id.* ¶ 5.

Lewis and Rambhia are members and managers of Grasshopper.  Lewis Decl. ¶ 1; Rambhia Decl. ¶ 1.  Both Lewis and Rambhia state that they only communicated with Vuori in their "official capacit[ies]" as Grasshopper's managers, and not in their "individual capacit[ies]."

1  Lewis Decl. ¶ 5; Rambhia Decl. ¶ 3.

2      Lewis currently lives in New York and has only lived elsewhere when he attended college

3  in Ohio.  Lewis Decl. ¶ 2.  He met Vuori in Nevada in 2015 and they bonded over a shared interest

4  in gaming and entrepreneurship.  Lewis Reply Decl. (dkt. 20-1) ¶ 2.  In May of 2017, Lewis sent

5  an email to Grasshopper's attorney, with a blind copy to Vuori, stating that Vuori would receive

6  ten percent of the Fund's carry in return for:

7       • Evaluating macroeconomic trends in the cryptocurrency market.
        • Helping us make buy and sell decisions on tokens
8       • Helping portfolio companies when we engage management
          teams
9       • When we begin to expand, help us identify hiring needs
        • Emotional support for the ups and downs of running a fund.
10

11  *Id.* ¶ 2 & Ex. 1.  Lewis asked the attorney to "[l]et [them] know how much that will cost,"

12  apparently intending for the attorney to prepare a contract.  *Id.* Ex. 1.  According to Lewis, "Vuori

13  never objected to [that] email or attempted to correct his anticipated role."  *Id.* ¶ 3.  Lewis

14  characterizes the parties' negotiations as anticipating that Vuori would provide advisory services

15  remotely, and that his location would be irrelevant to those services.  *Id.* ¶ 4.  Lewis did not

16  anticipate that Vuori, who is not a licensed broker, would solicit investments for Grasshopper.  *Id.*

17  ¶ 5.

18      Lewis visited Northern California once, in September of 2017, but although he had lunch

19  with Vuori during that visit, the purpose of his trip was not related to Vuori, they did not discuss

20  the proposed contract, and Vuori did not provide any services to Lewis.  Lewis Decl. ¶ 11.  That

21  meeting was the only time Lewis communicated with Vuori except by telephone or email.  *Id.*

22  ¶ 13.

23      In July of 2017, Lewis "became very ill and was diagnosed with Ameobiasis/E.Histolytica,

24  a life-threatening illness" from which he has not recovered.  *Id.* ¶ 10.  Due to Lewis's illness, the

25  September trip to California was "incredibly stressful on [his] body and threatened his health."  *Id.*

26  In December of 2017, Lewis's doctor wrote that he has "Infective Colitis with Gastero [sic]

27  Intestinal Symptoms," and that "it is best for him not to travel."  Lewis Reply Decl. Ex. 3.  Lewis

28  has no plans to return to California.  Lewis Decl. ¶ 11.

Lewis believes that the potential witnesses in this case do not live or work in this district. *Id.* ¶ 12.  He identifies two potential witnesses: Matt Golden, who lives in Toronto, Canada, and David Rhodes, who lives in Rochester, New York.  *Id.*  Defendants submit a declaration by Rhodes confirming that he lives in Rochester and stating that, as the primary caregiver for his elderly parents, "it would be extremely difficult for [him] to travel to California from New York to serve as a witness."  Rhodes Decl. (dkt. 16-3) ¶¶ 2–5.

Rambhia lives and works in Cleveland, Ohio, where he attends Case Western Reserve University as a second-year medical student and works remotely with Lewis on behalf of Grasshopper.  Rambhia Decl. ¶¶ 2, 4, 5.  Rambhia takes classes from Monday through Friday and often has pre-clinical commitments at a hospital in evenings and on weekends.  *Id.* ¶ 5.  He is permitted only two flexible days off from school per year, and states that he might be forced to repeat a semester or suffer other adverse effects if required travel to California for this case.  *Id.* Rambhia most recently visited Northern California in the summer of 2013, and visited Southern California in January of 2016.  *Id.* ¶ 7.  He has never visited California to conduct business for Grasshopper.  *Id.*  Flights from Cleveland to New York take less than half as long as flights from Cleveland to San Francisco.  Lewis Reply Decl. ¶ 7.

### 2.  Vuori's Evidence

Vuori states that Lewis reached out to him to discuss Grasshopper in early May of 2017, and that Vuori, Lewis, and Rambhia reached an agreement for Vuori to serve as an adviser in exchange for ten percent of the Fund's carry in mid-May.  Vuori Decl. (dkt. 19-1) ¶ 2.  Vuori negotiated that agreement from California, and he received "the distinct impression that [Lewis and Rambhia] sought out [his] services specifically because of his ties to Silicon Valley and the Bay Area."  *Id.* (emphasis omitted).  When Vuori told Lewis that he needed some time to review a draft memorializing their agreement, Lewis responded that a "few weeks doesn't hurt us" and that he hoped their relationship would last for ten to twenty years.  *Id.* ¶ 12 & Ex. E.

Vuori has resided in Piedmont, California at all relevant times, and has performed all of his work for Grasshopper from California, with the exception of work that he did while on vacation in Finland.  *Id.* ¶ 13.  Vuori's work for Grasshopper has included "recruiting potential investors" in

addition to providing advice, and he has reached out to several potential investors (and at least one bank) in the Bay Area, in some cases at the specific request of Lewis and Rambhia. *Id.* ¶¶ 3–6, 9 & Ex. D. When Vuori, Lewis, or Rambhia reached out to potential investors, they typically shared a PowerPoint presentation created by Lewis and Rambhia that "touted [Vuori's] involvement as an advisor" and included his name and likeness. *Id.* ¶ 4 & Ex. A.

According to Vuori, Defendants used a law firm and a bank in California, and corresponded with "many" investors in California. *Id.* ¶¶ 7, 10, 12. Lewis offered to meet with one such investor during his September 2017 visit to San Francisco. *Id.* ¶ 7 & Ex. B. Lewis also sent an email to Vuori before that trip, stating that he would "like for the 4 of us to meet and just talk[;] you can get to know the team and also make sure we are all on the same page of where we want to go." *Id.* ¶ 8 & Ex. C. Lewis also acknowledged the importance of Vuori's connections to Grasshopper's investor outreach: "I feel very confident with your connections and our connections that we will get to $25MM in fee-based AUM by 11/1." *Id.* Ex. C.

### C. The Parties' Arguments

#### 1. Defendants' Motion

Defendants move to dismiss all of Vuori's claims on the basis that this Court lacks personal jurisdiction over all Defendants. Mot. (dkt. 16) at 1. Defendants contend that they lack sufficient minimum contacts with California. *Id.* Defendants also move to dismiss for improper venue under 28 U.S.C. § 1391(b). *Id.* Alternatively, Defendants move to transfer the present action to the United States District Court for the Eastern District of New York in accordance with 28 U.S.C. § 1404(a). *Id.* at 2. Defendants assert that transfer is warranted based on the convenience of the parties and witnesses and the hardship Defendants would experience if the present action were to remain before this Court.

##### a. Personal Jurisdiction

Defendants contend that this Court cannot exercise specific jurisdiction over Defendants because they lack sufficient minimum contacts with California, using the Ninth Circuit's three-part test of purposeful direction or availment, a claim arising or resulting from Defendants' forum-related activities, and circumstances such that the exercise of jurisdiction would comport with fair

play and substantial justice. *Id.* at 4–5 (citing, *e.g.*, *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013)).

i.   Purposeful Availment or Direction

With respect to the first prong, Defendants contend that Vuori has not shown that Defendants have either "purposefully availed or purposefully directed any conduct toward California." *Id.* With respect to personal availment, Defendants assert that Vuori "fails to allege any claim that Defendants executed or performed a contract in California." *Id.* Concerning purposeful direction, Defendants contend that "there is no claim made in the Complaint that Defendants purposefully directed any actions towards California, either by directing its [sic] activities at California residents or advertising Plaintiff's alleged role in this state." *Id.*

Defendants argue that "the communications between the parties were alleged to have been made by email and phone only" and assert they are insufficient to confer personal jurisdiction over Defendants because "[i]t is well-settled in the Ninth Circuit and other circuits that phone calls, mailings, and facsimile do not provide for personal jurisdiction." *Id.* at 7 (citing, *e.g.*, *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)). Defendants also contend that Lewis's travel to San Francisco constitutes an "isolated event," and that "some 'single or occasional acts' may create only an 'attenuated' affiliation with the forum that will not support exercise of personal jurisdiction." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)). Defendants concede that Lewis met with Vuori in San Francisco one time, but assert that the parties did not discuss Grasshopper-related matters. *Id.* at 8 (citing Lewis Decl. ¶ 11). Additionally, Defendants assert that Lewis "has not returned to San Francisco since nor has any plans to return in the future." *Id.* (citing Lewis Decl. ¶ 10).

ii.   Arising from Defendants' Forum-Related Activities

With respect to the second prong of the personal jurisdiction test, Defendants contend that none of Vuori's allegations "arise from any Grasshopper forum-related activities, other than mere email and phone conservations with [Vuori] and one vaguely described lunch with Lewis." *Id.* at 8–9. Accordingly, Defendants assert that "there is no indication that but for Defendants' activities in California, [Vuori] would not have suffered loss," and that the connection to the forum is too

United States District Court
Northern District of California

1  attenuated for the Court to exercise specific personal jurisdiction.  *Id.*

2                      iii.  Fair Play and Substantial Justice

3         Defendants assert that, as for the "fair play and substantial justice" prong, it would be

4  unreasonable for this Court to exercise personal jurisdiction in the present action because of the

5  hardship it would impose on each Defendant.  *Id.* at 9.  With respect to Grasshopper, Defendants

6  contend that it would be burdened primarily because Grasshopper would have to shut down for

7  any period of time that Lewis is in California, as "the *private keys* that enable Grasshopper to

8  make trades cannot be transported" and are located in  Jericho, New York.  *Id.* 9–10 (citations

9  omitted).  Concerning Lewis, Defendants' main contention is that exercising personal jurisdiction

10  over him would be unreasonable and would pose a hardship because travel associated with

11  litigating this case in California could "cause [Lewis] serious bodily harm," due to the fact that he

12  was recently diagnosed with Ameobiasis/E.Histolytica.  *Id.* at 10 (citing Lewis Decl. ¶ 9–10).

13  With respect to Rambhia, Defendants' principal argument is that litigating this case in California

14  would be unreasonable because it would disrupt his enrollment as a second-year medical student at

15  Case Western Reserve University School of Medicine.  *Id.*

16             iv.  Personal Jurisdiction over Lewis and Rambhia Based on Their Roles as
17                 Members and Managers of Grasshopper

18         Defendants contend that, even if this Court has jurisdiction over Grasshopper, "there is no

19  basis which allows for the Court to exercise personal jurisdiction over Defendants Lewis and

20  Rambhia."  *Id.* at 11.  Defendants assert that "a nonresidential individual is not subject to personal

21  jurisdiction based solely upon acts in the forum state undertaken in his or her corporate capacity."

22  *Id.* at 12 (citing *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012)).  Defendants

23  further assert that Vuori's "claims against Defendants Lewis and Rambhia are based solely on

24  their roles as managing members of Grasshopper," and therefore do not constitute a basis for this

25  Court to exercise personal jurisdiction over Lewis and Rambhia in their individual capacities.  *Id.*

26         b.  Venue

27         Defendants contend that Vuori's Complaint should be dismissed for improper venue

28  pursuant to 28 U.S.C. § 1406.  Mot. at 13.  Defendants argue that Vuori cannot satisfy the venue

1  provision invoked in his complaint, 28 U.S.C. § 1391(b)(2), which requires that a substantial part

2  of the events giving rise to the claim occurred in this district.  *Id.*

3  Alternatively, if the Court determines that venue is proper, Defendants contend that this

4  case should be transferred to the United States District Court for the Eastern District of New York

5  pursuant to 28 U.S.C. § 1404.  *Id.* at 17.  Defendants assert that, "if venue is found to be proper in

6  this District, the Court may nonetheless find that transfer is warranted based on the consideration

7  of the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses;

8  and (3) the interests of justice," with the third factor breaking down into a number of subfactors.

9  *Id.* (citing 28 U.S.C. § 1404(a)).  Defendants contend that all three factors support transferring this

10  case to the Eastern District of New York.  *Id.* at 18.

### 2. Vuori's Opposition

12  Vuori contends that Defendants' motion should be denied in its entirety because this Court

13  has personal jurisdiction over Defendants, venue is proper in the Northern District of California,

14  and Defendants have not met their burden to show that the case should be transferred to the

15  Eastern District of New York.  Opp'n (dkt. 19) at 1.

#### a. Personal Jurisdiction

17  Vuori asserts that this Court has personal jurisdiction over Defendants because Defendants

18  sought to work with Vuori, a California resident, "specifically because of his ties to, and network

19  of, other Californians" and because Defendants transacted business in California.  *Id.* at 3–4.

##### i. Purposeful Availment

21  Addressing purposeful availment for the purpose of his contract claims, Vuori asserts that

22  the Ninth Circuit has "'held that a non-resident defendant's act of soliciting business in the forum

23  state will generally be considered purposeful availment if that solicitation results in contract

24  negotiations or the transaction of business.'"  *Id.* at 5 (quoting *Unic Oil Compania v. Internacional*

25  *De Granos E Insumos S.A. De C.V.*, 92 F.3d 1194 (9th Cir. 1996)) (additional citations omitted).

26  Vuori contends that Defendants purposefully availed themselves when they: (1) "contacted Vuori

27  in California to solicit his advisory services"; (2) "evince[d] an intent that the contract be

28  performed in" California because "Vuori was brought on for the express purpose of gaining access

United States District Court
Northern District of California

1   to his network of California investors, thus indicating that all parties intended that he would

2   perform his work in California"; (3) intended that the relationship be "lasting, rather than a one-

3   off" because Defendants stated that their "'[g]oal'" was a "'10-20 year relationship'"; and (4)

4   engaged in dealings that show, on the whole, "contacts with California 'can in no sense be

5   reviewed as random, fortuitous, or attenuated'" because Defendants routinely sought to utilize

6   contacts from Vuori's California-based network to recruit investors as well as to establish a

7   relationship with a bank in California.  *Id.* at 6–7 (citations omitted).

8                               ii.  Purposeful Direction

9          Turning to his tort claims based on misappropriation of likeness, Vuori argues that a

10  purposeful direction analysis also supports exercising jurisdiction over Defendants based on the

11  three-part test of whether a defendant "(1) committed an intentional act, (2) expressly aimed at the

12  forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

13  *Id.* at 4–5, 8 (quoting *Dole Food*, 303 F.3d at 1111).  Vuori asserts that all three requirements are

14  satisfied in this case because investors in California received Defendants' PowerPoint presentation

15  that included Vuori's likeness and because Vuori suffered harm in California.  *Id.* at 8–9.

16                      iii.  Arising from Defendants' Forum-Related Activities

17         Vuori asserts that his claims arise from Defendants' forum-related activities because "[i]f

18  Defendants had not done business with [Vuori] and purposefully availed themselves of the forum

19  state, [Vuori] would have no claims against them because he would not have suffered an injury

20  that resulted out of the alleged breach of contract."  *Id.* at 9 (quoting *Long*, 2016 WL 6024591, at

21  *6) (first alteration in original).

22                              iv.  Fair Play and Substantial Justice

23         Vuori contends that, in determining whether exercising personal jurisdiction over

24  nonresident defendants "'comports with fair play and substantial justice' and is therefore

25  'reasonable,'" courts look to the following seven factors:

26                 (1) the extent of the defendant's purposeful injection into the forum
                   state's affairs; (2) the burden on the defendant of defending in the
27                 forum; (3) the extent of conflict with the sovereignty of the
                   defendants' state; (4) the forum state's interest in adjudicating the
28                 dispute; (5) the most efficient judicial resolution of the controversy;

United States District Court
Northern District of California

13

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* at 9–10 (quoting *Dole Food*, 303 F.3d at 1114).  Vuori contends that the first, fourth, and sixth factors favor exercising personal jurisdiction over Defendants.  *Id.* at 10.

> v.   Jurisdiction over Lewis and Rambhia in Their Individual Capacities

Regarding Defendants' argument that this Court may not exercise personal jurisdiction over Lewis and Rambhia in their individual capacities because they acted exclusively in their official capacities as members and managers of Grasshopper, Vuori contends that the Supreme Court has "'reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity.'"  *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).  Vuori asserts that, "where a corporation (or LLC) and its officers are named as defendants, the proper course is to analyze minimum contacts for each defendant individually, whether corporation or officer," and that both Lewis and Rambhia have "extensive personal contacts with California" such that this Court can exercise personal jurisdiction over them.  *Id.* at 12–13 (citations omitted).

> b.   Venue

Vuori contends that "[v]enue is proper in this district so long as a 'substantial part of the events or omissions giving rise to the claim occurred here.'"  *Id.* at 13 (quoting 28 U.S.C. § 1391(b)(2)).  Vuori further contends that he "'need not show that the Northern District of California has the most substantial relationship to the dispute . . . or that it is the "best" venue.'"  *Id.* (quoting *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011)).  Additionally, Vuori asserts that the Ninth Circuit has held that "venue in a breach of contract case lies in a district where the agreement was to be performed, because 'the place of performance is determined at the inception of the contract and therefore parties can anticipate where they may be sued.'"  *Id.* at 13 (citations omitted).  Accordingly, Vuori asserts that venue is proper in this District because "the parties' agreement called for Vuori to perform his advisory work here."  *Id.*  According to Vuori, Defendants' argument that the intended place of performance of the contract was in New York is incorrect

14

because "Vuori was recruited to find new investors, build the Fund's network, and, as necessary, provide strategic guidance" in California. *Id.* at 14 (citing Complaint ¶¶ 65–72).

### c. Transfer

Vuori contends that "Defendants base their request [to transfer the case] almost exclusively on their personal convenience, but the record demonstrates that the Northern District of California is the most practical forum for both party and third-party witnesses." *Id.* at 2. While Vuori acknowledges that 28 U.S.C. § 1404(a) permits this Court to transfer the present action "to any other district or division where it might have been brought," he asserts that Defendants have not satisfied their burden of demonstrating that transfer is warranted. *Id.* at 14 (citations omitted).

Vuori contends that courts look to the following factors when considering a discretionary motion to transfer:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 14–15 (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)). Vuori asserts that these factors "overwhelmingly favor not transferring the action." *Id.* at 15.

### 3. Reply

#### a. Personal Jurisdiction

Defendants contend that Vuori has failed to establish personal jurisdiction, arguing that none of the points Vuori raised regarding Defendants' contacts with California are sufficient to satisfy his burden of establishing the first two prongs of the Ninth Circuit's three-prong test for specific personal jurisdiction. Reply (dkt. 20) at 1–2. Regarding Vuori's first point, namely that Defendants solicited Vuori services as an advisor, Defendants assert that Vuori's residence in the Northern District of California amounts to "nothing more than an 'attenuated' affiliation with the forum with regard to the allegations made in the Complaint." *Id.* at 2 (quoting *Burger King*, 471 U.S. at 475 n.18). Defendants also contend that Vuori "does not actually allege that Defendants

15

1   reached out to [him] *because* he resides in the Northern District" and that "where [Vuori] lived is

2   irrelevant as his advisory services were to be done over email and the phone." *Id.* at 3 (citing

3   Lewis Reply Decl. ¶ 4).

4          Defendants contend that Vuori attempts to raise a "new argument" that he was hired to

5   "solicit money" from Silicon Valley investors. *Id.* Defendants reiterate that "the May 16, 2017

6   email [outlining Vuori's role with Grasshopper]—which [Vuori] claims forms the alleged

7   agreement—does not refer to (or allude to) any solicitation services whatsoever." *Id.* at 4.

8   Defendants therefore contend that "the alleged contract or promise does not relate to Defendants'

9   California related activities." *Id.* at 4–5. Moreover, Defendants argue that Vuori "cannot enforce

10  a contract where he was to receive a percentage of the fund in exchange for soliciting investors"

11  because he was not a licensed broker in accordance with either California or federal law. *Id.* at 5.

12         Defendants contend that the advisory services that Vuori provided are insufficient to

13  establish personal jurisdiction over Defendants because the intended place of performance of the

14  contract was New York, Defendants engaged in all Grasshopper-related communications with

15  Vuori exclusively by email or phone, and Lewis performed all contract negotiations in New York.

16  *Id.* Defendants reiterate that "[i]n determining minimum contacts, the Court looks to the activities

17  of Defendants, not [Vuori]." *Id.* at 7. Defendants assert that Vuori's "anticipated advisory

18  services—namely those described in the May 16, 2017 email—were not directed at California

19  residents; rather they were to be directed at Defendants, who are New York and Cleveland

20  residents." *Id.* at 7 (citing Complaint ¶¶ 7–9). Defendants also reiterate that "no meaningful link

21  exists between those services and California" and that Vuori is unable to "satisfy his burden to

22  show that his anticipated advisory services were *expressly aimed* at California." *Id.* (citing *Wash.*

23  *Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678–79 (9th Cir. 2012)).

24         Turning to Vuori's misappropriation of likeness claim, Defendants argue Vuori cannot

25  establish personal jurisdiction over Defendants because Vuori himself "shared the Power Point

26  presentation that touted his involvement as an advisor" and "[m]isappropriation of likeness under

27  both common law and Civil Code section 3344 requires non-consensual use." *Id.* at 7–9 (citing

28  *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 70, 72 (1995)). Because Vuori

United States District Court
Northern District of California

1  "consented to the use of his likeness," Defendants assert that Vuori's claim "ha[s] no basis in fact

2  and [Vuori] cannot meet his burden of establishing minimum contacts." *Id.* at 8.

3      Defendants also reiterate their argument that they have met their burden to show that

4  exercising personal jurisdiction over them would be unreasonable as well as their argument that

5  Lewis and Rambhia lack sufficient contacts with California because they acted exclusively in their

6  roles as members and managers of Grasshopper. *Id.* at 8–9.

7          b.  Venue

8      Defendants dispute Vuori's contention "that the events in this District are substantial

9  enough to make venue proper," arguing that "he does not allege here that his solicitation of funds

10  were a part of any alleged contract." *Id.* at 11.  Defendants contend that Vuori "was not obligated

11  or tied to the Northern District," as "the anticipated services outlines in [Vuori's] Complaint and

12  in the May 16, 2017 email could be performed anywhere." *Id.* (citing Complaint ¶ 45; Lewis

13  Reply Decl. ¶ 4).  Defendants further argue that "[t]he parties always anticipated that [Vuori]

14  would provide these services remotely" and that "[t]here is no connection to the Northern District

15  except for [Vuori's] current and unbound location." *Id.*  Accordingly, Defendants assert that "[n]o

16  sufficiently substantial events occurred in the Northern District" and that venue is improper. *Id.*

17          c.  Transfer

18      Defendants also renew their alternative request to transfer the case to New York "'[f]or the

19  convenience of the parties and witnesses, in the interest of justice,' and based on the

20  individualized facts of this case." *Id.* at 12 (quoting *GNC Franchising*, 211 F.3d at 498).   *Id.* at

21  12–13.  Concerning convenience of the parties, Defendants reiterate that: (1) Lewis "suffers from

22  a serious illness that restricts his mobility"; (2) Grasshopper would have to shut down completely

23  for any period of time that Lewis travels to California; and (3) "Rambhia would suffer a serious

24  disruption to his standing in medical school." *Id.* at 13.  Defendants also discuss other factors that

25  courts often look to when considering a motion to transfer.  Defendants contend that the parties'

26  contacts with this forum "do not meet the standard for minimum contacts for the personal

27  jurisdiction." *Id.* at 14.  With respect to California's interest in the present action, Defendants

28  assert that this factor "is at best neutral as [Vuori] does not dispute Eastern District of New York's

United States District Court
Northern District of California

17

United States District Court
Northern District of California

interest in adjudicating cases regarding companies that operate in New York." *Id.* at 14–15. Defendants also reiterate that "a substantial number of potential witnesses" live in or near the Eastern District of New York. *Id.* at 15. Finally, Defendants contend that the other factors courts often consider "are either neutral or irrelevant" and that, accordingly, if the case is not dismissed "[t]he interests of justice are best served if this case is transferred to the Eastern District of New York." *Id.*

### III.   ANALYSIS

#### A.   Motion to Dismiss for Lack of Personal Jurisdiction

##### 1.   Legal Standard for Rule 12(b)(2) Dismissal

A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, . . . uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

Personal jurisdiction depends on both substantive law and constitutional due process considerations. "Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Dole Food*, 303 F.3d at 1110. As Vuori's Complaint does not rely on any federal statute, the Court applies the law of California to determine whether personal jurisdiction exists. *See generally* Complaint. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Dole Food*, 303 F.3d at 1110 (citing Cal. Civ. Proc. Code § 410.10).

### 2.  Overview of Personal Jurisdiction

"For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  *Dole Food*, 303 F.3d at 1110–11 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'"  *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Personal jurisdiction may be either general or specific.  *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the Supreme Court explained that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are 'so continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317).  On the other hand, the Court continued, "[s]pecific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Id.* (second alteration in original; citation omitted).  Thus, "[i]n contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id.* (citation and internal quotation marks omitted).  Vuori does not argue that the Court has general jurisdiction over Defendants.  Accordingly, the sole jurisdictional inquiry for this Court is whether there is specific jurisdiction over Defendants.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton*, 465 U.S. at 775).  The exercise of specific jurisdiction is "consistent with due process" only where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State."  *Id.*; *see also Burger King*,

19

United States District Court
Northern District of California

471 U.S. at 474 ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State.").

A court may exercise specific jurisdiction over a non-resident defendant where the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food*, 303 F.3d at 1111.  The plaintiff bears the burden of satisfying the first two prongs of the test for specific jurisdiction.  *Id.* (citing *Sher*, 911 F.3d at 1361).  "If the plaintiff succeeds in satisfying both of the first two prongs, then the burden shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King*, 471 U.S. at 476–78).

Although the first prong of the test for specific jurisdiction is often referred to as "purposeful availment," the Ninth Circuit has explained that this is "shorthand" that refers to both "purposeful availment" and "purposeful direction."  *Schwarzenegger*, 374 F.3d at 802.  These are two "distinct concepts."  *Id.*  In *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, the Ninth Circuit explained that "[i]n tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum," whereas "in contract cases, we typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s] [a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." 433 F.3d at 1206 (citations omitted) (alterations in original).  "Here, although some of [Vuori's] claims sound in tort, they all arise out of the Defendants' contractual relationship with [him]. Accordingly, the Court will apply a purposeful availment analysis in evaluating Defendants'

contacts with California." *See Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *4 (N.D. Cal. July 1, 2011); *see also Sher*, 911 F.2d at 1362 (employing the purposeful availment test when some of the claims at issue sounded in tort, but all claims arose from a contractual relationship between the parties).

### 3. Purposeful Availment

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's action in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Deckla*, 357 U.S. 235, 253 (1958)). "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2004) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)). Rather, a "contract is only an intermediate step that connects prior negotiations with future consequences, the real object of a business transaction." *Long*, 2016 WL 6024591, at *3. Accordingly, courts consider "prior negotiations and contemplated future consequences, along with terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. "As the Ninth Circuit made plain in *Picot v. Weston*, the inquiry is limited to examining the defendant's conduct in the jurisdiction, not [the plaintiff's conduct]." *Netgear, Inc. v. Redzone Wireless, LLC*, No. 16-cv-06974-BLF, 2017 WL 2351359, at *3 (N.D. Cal. May 31, 2017) (citing *Picot*, 780 F.3d at 1213).

#### a. Prior Negotiations

"[I]f the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal*, 805 F.2d at 840; *see also Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) ("Soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business."), *rev'd on other grounds*, 499 U.S. 585 (1991).

In a declaration attached to his Opposition, Vuori states that he is a "Piedmont, California-based entrepreneur" and that Defendants contacted him to discuss "an arrangement through which

21

1    [Vuori] would serve as an advisor to Grasshopper in exchange for a percentage of the Fund's

2    profits."  Vuori Decl. ¶¶ 1–2.  He further states that he engaged in all prior negotiations in

3    California and that he performed all of his services for Grasshopper while in California, except

4    during time he spent in Finland on a family vacation.  *Id.* ¶ 2.  Regarding the nature of his

5    services, Vuori states that his two primary roles as an advisor were to recruit potential investors

6    and to provide strategic guidance.  *Id.* ¶ 3.  With respect to potential investors, Vuori states that he

7    "reached out on Grasshopper's behalf to numerous California-based investors."  *Id.* ¶ 4.  He also

8    states that he "put Lewis and Rambhia in touch with bankers at Silicon Valley Bank," and that

9    "Lewis indicated . . . that he hoped to hire [Silicon Valley Bank] to do work on Grasshopper

10   Capital's behalf."  *Id.* ¶ 9.

11          Lewis, on the other hand, states that the parties' negotiations anticipated that Vuori would

12   work "remotely, via phone and email" and that Vuori's "location at the time he was to provide

13   these advisory services was irrelevant to what [Defendants] were asking him to do."  Lewis Reply

14   Decl. ¶ 2.  Lewis also states that "Grasshopper engaged only in negotiations with [Vuori]

15   regarding an advisory deal with Grasshopper from New York."  Lewis Decl. ¶ 5.  Furthermore,

16   Lewis disputes the nature of Vuori's role as an advisor.  In particular, Lewis states that Defendants

17   "never anticipated" that Vuori "would be soliciting investments for Grasshopper as part of any

18   agreement."  Lewis Reply Decl. ¶ 5.

19          The location where parties engaged in negotiations does not support a finding of

20   purposeful availment, as Vuori does not dispute Lewis's contention that Defendants did not travel

21   to California to engage in negotiations.  *See Long*, 2016 WL 6024591, at *4 (citing *McGlinchy v.*

22   *Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988)); *see also LocusPoint Networks, LLC v.*

23   *D.T.V., LLC*, No. 3:14-cv-01278-JSC, 2014 WL 3836792, at *5 (N.D. Cal. Aug. 1, 2014).

24   Similarly, Defendants' negotiations with Vuori by telephone and by email do not support

25   purposeful availment.  *Long*, 2016 WL 6024591, at *4; *see also Roth v. Garcia Marquez*, 942 F.2d

26   617, 622 (9th Cir. 1991) ("[U]se of the mails, telephone, or other international communications

27   simply do not qualify as purposeful activity invoking the benefits and protection of the [forum]

28   state." (internal quotation marks omitted) (second alteration in original)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Vuori's statements regarding his prior negotiations with Defendants as well as his

2    statements regarding the nature of his work, however, favor a finding of purposeful availment.

3    Defendants do not dispute that Vuori was a California resident during the time of the alleged

4    negotiations.  Furthermore, it is apparent that they were aware that Vuori was in California during

5    at least part of the time period at issue, as Lewis met with him in California while negotiating a

6    written contract.  Lewis Decl. (dkt. 16-1) ¶ 11 ("I was in San Francisco from September 17th to

7    19th . . . At the time, the contract was being negotiated and Vuori was reviewing the proposal.  I

8    did meet with Vuori for lunch but . . . we did not discuss the proposal and he did not provide me

9    any services.").  While Defendants contest the precise nature of Vuori's work, and whether it

10   required him to be in California, "[s]uch factual disputes. . .  must be resolved in [Vuori's] favor."

11   *See Long*, 2016 WL 6024591, at *4 (citing *Pebble Beach*, 453 F.3d at 1154).  Vuori's declaration

12   that he understood Defendants to be interested in his ties to Silicon Valley, Vuori Decl. ¶ 2, his

13   activities reaching out to potential investors in California at Defendants' specific request, *id.* ¶ 6,

14   and Lewis's statement in an email that he believed Vuori's "connections" would allow Defendants

15   to reach their desired volume of investment, *id.* Ex. C, are sufficient in this context for the Court to

16   infer that Defendants "solicited and negotiated with [Vuori], a California resident, to perform

17   services on their behalf in California and to help them expand their business presence in

18   California" as part of his advisory services to Grasshopper.  *See Long*, 2016 WL 6024591, at *4.

19            b.   Future Consequences

20            "Under the second factor, '[p]arties who reach out beyond one state and create continuing

21   relationships and obligations with citizens of another state are subject to regulation and sanctions

22   in the other State for the consequences of their activities.'"  *Id.* at *5 (quoting *Burger King*, 471

23   U.S. at 473) (internal quotation marks omitted) (alteration in original); *see also LocusPoint,* 2014

24   WL 3836792, at *5.  Vuori states that he "reached an agreement" with Defendants where he would

25   perform advisory services for Grasshopper "in exchange for a percentage of the Fund's profits."

26   Vuori Decl. ¶ 2.  He states that, when he informed Lewis and Rambhia that he "need[ed] to give

27   his attorneys time to review a draft agreement" regarding his role as an advisor, they replied that

28   "a delay of '[a] few weeks doesn't hurt'" them because their "'[g]oal is [a] 10-20 year

                                        23

relationship.'" *Id.* at ¶ 12 (quoting *id.* Ex. E) (first alteration in original).  While Defendants argue that they intended Vuori to perform his services remotely and that "Vuori's location at the time he was to provide these advisory services was irrelevant to what we were asking him to do," they still expressed that their goal was to forge a multi-year relationship with Vuori, a California resident. *See LocusPoint*, 2014 WL 3836792, at *6 (finding that, despite the defendant's contentions that "all the future cooperation in connection with the contract [did] not affect California," the parties, namely a California resident plaintiff and a nonresident defendant, had "significant continuing obligations to each other under the Agreement" that "favor[ed] a finding of purposeful availment").  Accordingly, Defendants' stated goal of a multi-year relationship with Vuori, a California resident, in addition to their intent, as discussed above, that Vuori provide business connections in California, supports a finding of purposeful availment.

### c.   Terms

"Terms that provide fair notice to a defendant that he may possibly be subject to suit in the forum state weigh in favor of a purposeful availment finding."  *Id.* (citations omitted); *see also Long*, 2016 WL 6024591, at *5.  Neither party addresses whether the terms of the parties' oral agreement favor a finding of purposeful availment in a meaningful way, and none of the parties' correspondence in the record discusses forum selection for possible disputes.  Accordingly, this factor is neutral and does not weigh in favor of or against a finding of purposeful availment.

### d.   Course of Dealing

The "quality and nature" of Defendants' relationship with Vuori in California "can in no sense be viewed as random, fortuitous, or attenuated."  *See Burger King*, 471 U.S. at 480 (internal quotation marks omitted); *see also Long*, 2016 WL 602591, at *6; *LocusPoint*, 2014 WL 3836792, at *7.  As mentioned above, Lewis states that "[i]t was never anticipated by [him] or by anyone that Vuori would be serving as a broker or that he would be soliciting investments for Grasshopper as part of any agreement."  Lewis Reply Decl. ¶ 5.  Vuori states, however, that one of his responsibilities as an advisor to Grasshopper was to recruit potential investors.  Vuori Decl. ¶ 4. He further states that he introduced Lewis and Rambhia to California-based investors, that he "was involved in [Defendants'] outreach efforts" to numerous investors based in California, and that he

24

"reach[ed] out to specific individuals based in California" at Lewis and Rambhia's request. *Id.* ¶ 4–7. Moreover, Lewis also acknowledged in his July 22, 2017 email to Vuori the importance of Vuori's contacts to Defendants' ability to secure investments. *Id.* Ex. C. In the context of the present motion, this factual dispute must be resolved in Vuori's favor. *See Long*, 2016 WL 6024591, at \*4 (citing *Pebble Beach*, 453 F.3d at 1154). Taken together, the record supports a finding of purposeful availment.

### 4. Claims Arising out of Defendants' Forum-Related Activities

The Ninth Circuit employs a "'but for' test" to determine whether the plaintiff's claims arise out of or relate to the defendants' conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). "This requirement is met if, but for a defendant's forum-related activities through which a defendant purposely avails itself of the forum, the plaintiff would not have suffered injury." *Long*, 2016 WL 6024591, at \*6 (quoting *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000) (internal quotation marks omitted). As discussed above, if Defendants had not purposefully availed themselves of the privilege of conducting business in California by working with Vuori, then Vuori would not have any claims against Defendants. *See Long*, 2016 WL 6024591, at \*6 ("If Defendants had not done business with Plaintiff and purposefully availed themselves of the forum state, Plaintiff would have no claims against them because he would not have suffered an injury that resulted out of the alleged breach of contract."). Vuori's claims arise out of Defendants' forum-related activities.

### 5. Reasonableness

The third prong of the test "examines whether the exercise of jurisdiction would be reasonable." *Menken*, 503 F.3d at 1058. Because Vuori "has satisfied the first two prongs of the test, the burden shifts to Defendants to present a compelling case that the exercise of personal jurisdiction would be unreasonable." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). The Ninth Circuit has set forth the following seven factors to determine reasonableness, none of which are dispositive:

> (1) the extent of defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant on defending in the forum; (3) the extent of conflict with the sovereignty of the

United States District Court
Northern District of California

defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)).

### a.   Purposeful Injection

The analysis of purposeful interjection into the forum state's affairs "parallels the question of minimum contacts" in determining the reasonableness of an exercise of specific jurisdiction. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993); *see also* Long, 2016 Wl 6024591, at *6 ("The first factor depends on the same analysis that applies to purposeful availment.") (citing *Roth* , 942 F.2d at 623). For the reasons stated above, namely that Defendants purposefully availed themselves of the privileges of conducting business in California when they sought out Vuori, a California resident, to conduct business on their behalf, this factor favors a finding of reasonableness.

### b.   Burden on Defendants

To warrant dismissal on the basis of burden, Defendants must show that litigating in California is "so gravely difficult and inconvenient that it violates due process." *See Burger King*, 471 U.S. at 485; *see also Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1481 (9th Cir. 1986) ("Unless such inconvenience [to Defendants] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." (citation omitted)). Defendants contend that they would experience financial burdens associated with traveling to California and hiring local counsel in order to litigate this case here. Lewis Decl. ¶¶ 6, 9; Rambhia Decl. ¶ 6. Defendants contend that Grasshopper would be burdened by litigating this case here because "none of the documents, records, files, officers, or members of Grasshopper are located in California," and because Grasshopper would have to temporarily shut down if Lewis was required to leave New York. Lewis Decl. ¶¶ 6, 8. As to Lewis, Defendants contend that he has been diagnosed with Ameobasis/E.Histolytica and advised by his physician that he should not travel. Lewis Reply. Decl. ¶ 6 & Ex. 2. Although Lewis previously traveled to San Francisco after his diagnosis, he states that the experience "was incredibly stressful on [his] body and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

threatened [his] health." Lewis Decl. ¶ 10. Regarding Rambhia, Defendants contend that litigating his case here would "severely impact [his] lessons, grades, and post-school opportunities." Rambhia Decl. ¶ 5.

The travel-related and financial burdens associated with litigating this case here are not in themselves so severe as to constitute a deprivation of due process. *See Panavision Int'l, L.P. v Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (finding that the burden on the defendant, an Illinois resident, of litigating the case in California was "not so great as to deprive him of due process"); *see also Viz Commc'ns, Inc. v. Redsun*, No. C-01-04235 JF, 2003 WL 23901766, at *5 (N.D. Cal. Mar. 28, 2003) ("[M]odern communication makes participation in the instant litigation much less onerous [than] in the past."). Defendants have not cited authority addressing circumstances comparable to the potentially detrimental effects of travel on Lewis's health, Rambhia's studies, or Grasshopper's operations, nor have they addressed the extent to which those risks would remain in the future if the case eventually goes to trial.[2] This factor weighs against a finding of reasonableness, but is not dispositive.

### c. Sovereignty of Defendants' State

"This factor is a lesser barrier to reasonableness when the defendant resides in another state rather than in a foreign nation." *Long*, 2016 WL 6024591, at *7 (citations omitted). Furthermore, "Defendants have not really explained how litigation in California would conflict with the sovereignty of their states." *Cont'l Appliances, Inc. v. Thomas*, No. C-12-1310 EMC, 2012 WL 3646887 (N.D. Cal. Aug 23, 2012) (finding that this factor supported reasonableness in a case arising under federal and California law against nonresident defendants from Georgia and Kentucky); *see also LocusPoint*, 2014 WL 3836792, at *9 ("[S]ince Defendant is not from a foreign nation and has not demonstrated that a conflict with the sovereignty of its home state exists, this factor does not weigh against the reasonableness component of personal jurisdiction."). As in *Thomas* and *LocusPoint*, this factor does not weigh against reasonableness under the circumstances of this case.

---

[2] As discussed at the hearing, there are a number of options at the Court's disposal that might be appropriate to mitigate these issues.

United States District Court
Northern District of California

### d. Forum State's Interest

This factor weighs in favor of reasonableness. Where a plaintiff resides in California and the injury occurs here, California has a strong interest in adjudicating the dispute. "A state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (internal quotation marks and citations omitted). Vuori is a California resident. Accordingly, "California has an interest in providing itself as a forum for resolving the dispute." *Long*, 2016 WL 6024591, at * 7; *see also LocusPoint*, 2014 WL 383672, at * 9.

### e. Efficient Judicial Resolution

This factor "requires the Court to evaluate where the witnesses and evidence are likely to be located." *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1019 (N.D. Cal. 2016) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993)). "[E]ven if Defendant[s] demonstrated that most of the witnesses and evidence were located elsewhere, this factor is no longer heavily weighted in light of modern technology." *Id.* at 1020 (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements (London) Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003)). Vuori has identified potential witnesses located in California, and Defendants have identified potential witnesses on the East Coast and in Canada. Vuori Decl. ¶¶ 5–7; Lewis Decl. ¶ 12; Rhodes Decl. ¶ 2. Defendants also assert that all of Grasshopper's documents, records, and files are not in California. Lewis Decl. ¶ 6. At most, this factor slightly weighs against a finding of reasonableness.

### f. Plaintiff's Interest

"The sixth factor favors a finding of reasonableness because it will indeed be more convenient for [Vuori] to litigate the case in the same state where he resides." *See Long*, 2016 WL 6024591, at *7.

### g. Alternative Forum

Regarding the existence of an alternative forum, "the test is not whether the current forum state is more convenient for [Vuori], but rather whether [Vuori] would be precluded from adjudicating the dispute in a different forum." *Id.* (citing *Roth*, 942 F.2d at 624–25). Vuori "bears

28

the burden of proving the unavailability of an alternative forum." *Roth*, 942 F.2d at 624–25 (citations omitted). Vuori has not shown that he could not litigate the present action in another forum. Accordingly, this factor favors Defendants.

* * *

In determining whether litigating this case in California would be reasonable, factors one, three, four, and six favor a finding of reasonableness. Factors two, five, and seven weigh against a finding of reasonableness, but factor five is not heavily weighted. The Court concludes that it is reasonable to exercise personal jurisdiction over Defendants in California.

### 6.   Jurisdiction over Lewis and Rambhia in Their Individual Capacities

Defendants contend that Vuori "makes no argument or showing as to why this Court should disregard the corporate form, or how Lewis and Rambhia have their own minimum contacts with the forum outside of Grasshopper." Reply at 10. "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521 (9th Cir. 1989). "On the other hand, [Defendants'] status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." *Calder*, 465 U.S. at 790; *see also Keeton*, 465 U.S. at 781 n.13 ("[W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity."). "Thus in both *Calder* and *Keeton*, the Supreme Court applied the constitutional due process analysis to the contacts of the individuals concerned; it did not consider the existence of a state-created corporate form to create a due process limit on jurisdiction." *Davis*, 885 F.2d at 521.

"Cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' between the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity." *Davis*, 885 F.2d at 523 n.10 (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)); *see also Allstar*, 666 F. Supp. 2d at 1120 ("Courts have thus found a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer is a primary

participant in the alleged wrongdoing or had control of and direct participation in the alleged

activities." (citations omitted, internal quotation marks omitted, and punctuation altered)).

For the reasons described above, it is clear from the record that Lewis and Rambhia were

the central figures in the challenged corporate activity.  Lewis and Rambhia are not only members

and managers of Grasshopper, but also both engaged in correspondence and negotiations with

Vuori regarding Vuori's service as an advisor to Grasshopper.  Lewis Decl. ¶¶ 1, 6; Rambhia

Decl. ¶ 1; Vuori Decl. ¶¶ 1–2, 4, 6, 7, 9, 11, 12 & Exs. C–E; Lewis Reply Decl. ¶¶ 1–2, 3 & Ex. 1.

Accordingly, they purposefully availed themselves of the forum.  *See Rimes v. Noteware Dev.*

*LLC*, No. C-09-0281 EMC, 2010 WL 3069250, at *2 (N.D. Cal. Aug. 4, 2010) (finding that a

defendant acting in his official capacity as a managing member of a limited liability company

purposefully availed himself of the forum when he prepared an initial draft of a compensation

agreement and sent a reply letter regarding the payment of merit bonuses).  But for Lewis and

Rambhia's correspondence and negotiations, Vuori would not have any claims in the present

action.  *See id.* (concluding that, but for the defendant's actions as a managing member of a

limited liability company, the plaintiff would not have a cause of action).  Lewis and Rambhia's

status as officers of Grasshopper does not alter the conclusion that it is reasonable for this Court to

exercise personal jurisdiction over them.

### 7.  Defendants' Arguments Concerning Vuori Soliciting Investments

In their Reply, Defendants contend that Vuori "improperly attempts to create a new

argument in his Opposition that he contracted with Defendants to *solicit* Silicon Valley investors

in order to establish minimum contacts."  Reply at 4.  Moreover, Defendants contend that Vuori

cannot enforce such an arrangement because Vuori is not a licensed broker in accordance with

federal and California law.  *Id.* at 5.  To the extent Defendants believe Vuori cannot show that the

parties intended his role with Grasshopper to include developing connections to potential investors

and other business partners in California, the Court disagrees for the reasons discussed above.  As

for the argument that such an arrangement would be illegal and unenforceable, and that an

unenforceable agreement would deprive this Court of personal jurisdiction over Defendants, the

Court declines to resolve such an issue raised for the first time in Defendants' reply brief.  *See Cal.*

*Sportfishing Prot. Alliance v. Pac. States Indus., Inc.*, No. 15-cv-01482-JD, 2015 WL 5569073, at *2 (N.D. Cal. Sept. 22, 2015) (declining to consider arguments raised for the first time in a reply). This holding is without prejudice to Defendants raising the issue at a later stage of the case addressing the merits of Vuori's claims.

### B.   Motion to Dismiss for Improper Venue

#### 1.   Legal Standard for Rule 12(b)(3) Dismissal

A party may bring a motion to dismiss an action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Plaintiff bears the burden of showing that venue is proper.  *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  Generally, a plaintiff asserting multiple claims must establish that venue is proper as to each claim.  *Adobe Sys., Inc. v. Childers*, No. 5:10-cv-03571-JF/HRL, 2011 WL 566812, at *7 (N.D. Cal. Feb. 14, 2011) (citation omitted).  "Once a court has determined that venue is proper as to one claim," however, "it may exercise pendent venue to adjudicate closely related claims."  <u>United Tactical Sys. LLC v. Real Action Paintball, Inc.</u>, 108 F. Supp. 3d 733, 753 (N.D. Cal. 2015); *see also Flamingo Indus. (USA) Ltd. v. U.S. Postal Serv.*, 302 F.3d 985, 997–98 (9th Cir. 2002), *rev'd on other grounds*, 540 U.S. 736 (2004).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted).  Whether to permit discovery relating to venue is within the Court's discretion.  *Trusted Health Prods., Inc. v. Blue Cross Labs., Inc.*, No. 5:13-375-DCR, 2014 Wl 3586256, at *2 (E.D. Ky. July 21, 2014) (citations omitted).  Dismissal, rather than transfer, may be appropriate where the transfer would be futile because the case would be dismissed even after transfer.  *See Altin Havayolu Tasamaciligi Turizm Ve Tic v. Sinnarajah*, No. C-07-6475 EDL, 2008 WL 691851, at *5 (N.D. Cal. Mar. 12, 2008) (citing *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992)).

United States District Court
Northern District of California

1

### 2.   Venue Is Proper in This District

2      The question of whether venue is "wrong" or "improper" is typically governed by 28

3  U.S.C. § 1391.  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568,

4  577 (2013).  That statute provides that civil actions may be brought in:

5              (1) a judicial district in which any defendant resides, if all
               defendants are residents of the State in which the district is located;
6
               (2) a judicial district in which a substantial part of the events or
7              omissions giving rise to the claim occurred, or a substantial part of
               property that is the subject of the action is situated; or
8
               (3) if there is no district in which an action may otherwise be
9              brought as provided in this section, any judicial district in which any
               defendant is subject to the court's personal jurisdiction with respect
10             to such an action.

11  28 U.S.C. § 1391(b); *see also Atl. Marine*, 134 S. Ct. at 577.

12      Vuori asserts that venue is proper in this District because "a substantial part of the events

13  giving rise to the claims occurred here."  Complaint ¶ 13.  "Section 1391(b)(2) does not require

14  that a majority of the events have occurred in the district where suit is filed, nor does it require that

15  the events in that district predominate."  *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131,

16  1136 (N.D. Cal. 2000) (citations omitted).  "All that Plaintiffs need show is that a substantial part

17  of the events giving rise to their claims occurred in the Northern District of California."  *Id.*; *see*

18  *also Richmond Techs.*, 2011 WL 2607158, at *10 ("Plaintiff need not show that the Northern

19  District of California has the most substantial relationship to the dispute . . . or that it is the 'best'

20  venue.").  Accordingly, "'for venue to be proper, significant events or omissions material to the

21  plaintiff's claim must have occurred in the district in question, even if other material events

22  occurred elsewhere."  *Richmond Techs.*, 2011 WL 2607158, at *10 (quoting *Gulf Ins. Co. v.*

23  *Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

24      Venue is proper in this District.  Vuori alleges that he engaged in negotiations and

25  performed the bulk of his duties as an advisor in California.  Vuori Decl. ¶¶ 2, 13.  Both Lewis and

26  Rambhia state that they engaged in negotiations with Vuori from New York and Ohio by phone

27  and email.  Lewis Decl. ¶ 2; Rambhia Decl. ¶ 3.  In their moving papers, Defendants contend that

28  "the intended performance of the alleged contract was in New York."  Mot. at 15.  There is no

United States District Court
Northern District of California

1   dispute, however, that Vuori was a California resident for the time period at issue, and Lewis

2   concedes in his reply declaration that "[t]he negotiations contemplating the agreement between

3   Grasshopper and Niko Vuori anticipated that Vuori would provide the services . . . remotely,"

4   presumably from California.  Lewis Reply Decl. at ¶ 4.  Nor is there any indication that the parties

5   expected Vuori to perform any of his contractual obligations in New York.  Furthermore, even

6   though events regarding the present action occurred elsewhere, namely in New York and in Ohio,

7   Vuori's efforts in this District are significant and constitute "a substantial part of the events giving

8   rise to [his] claims."  *See Rodriguez*, 89 F. Supp. 2d at 1136.[3]

9       **C.**    **Motion to Transfer**

10           **1.**   **Legal Standard for Transfer Pursuant to 28 U.S.C. § 1404(a)**

11        A case may be transferred "[f]or the convenience of the parties and witnesses, in the

12   interests of justice," to "any other district or division where it might have been brought."  28

13   U.S.C. § 1404(a).  There are two prongs to this analysis.  First, the transferee district must be a

14   district where the case could have originally been filed, meaning the court has jurisdiction and

15   venue is proper.  *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP,

16   2003 WL 22387598, at *1 (N.D. Cal. Oct. 14, 2003).  The moving party bears the burden to prove

17   this first step.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.

18   1979)).  If the first prong is satisfied, the court decides whether to grant or deny a motion to

19   transfer, balancing "the plaintiff's interest to freely choose a litigation forum against the aggregate

20   considerations of convenience of the defendants and witnesses and the interest of justice."

21   *Wireless Consumers*, 2003 WL 22387598, at *1; 28 U.S.C. § 1404(a).  The Ninth Circuit has

22   identified the following factors as relevant in determining whether to transfer a contract case:

23                  (1) the location where the relevant agreements were negotiated

24

25   _____

   [3] It is less clear that a substantial part of the events giving rise specifically to the Vuori's claims for misappropriation of likeness occurred here.  Vuori does not specifically allege or present

26   evidence that Rambhia and Lewis, as opposed to Vuori himself, used Vuori's likeness while they were in California or sent the slide deck containing his likeness to anyone in this District.  The

27   Court need not resolve that issue, however, because the close relationship between the misappropriation of likeness claims and the properly venued contract claims permits this Court to

28   hear the former claims under the doctrine of pendant venue.  See <u>United Tactical</u>, 108 F. Supp. 3d at 753.

*United States District Court*
*Northern District of California*

and executed, (2) the state that is most familiar with the governing law, (3), the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*GNC Franchising*, 211 F.3d at 498–99.  Some district courts have framed the relevant factors as follows:

> (1) the plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

*Royal Queentex Enters. Inc. v. Sara Lee Corp.*, No. C-99-4787 (MJJ), 2000 WL 246599, at *2 (N.D. Cal. Mar. 1, 2000) (citing *Decker Coal*, 805 F.2d at 843 (9th Cir. 1986)).  "These factors are non-exhaustive and the Court ultimately has discretion in deciding which factors to consider and whether they weigh in favor of transfer."  *Hendricks v. StarKist Co.*, No. 13-cv-729 YGR, 2014 WL 1245880, at *2 (N.D. Cal. Mar. 25, 2014) (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)).

### 2.  This Case Could Have Been Brought in the Eastern District of New York

This prong is satisfied because the Eastern District of New York has jurisdiction to hear the case and venue would be proper.  The Eastern District of New York has original subject matter jurisdiction over the present action because the parties are completely diverse and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  Lewis, Rambhia, and Grasshopper are subject to personal jurisdiction in the Eastern District of New York.  Lewis is a resident of the Eastern District of New York.  Lewis Decl. ¶ 2.  Grasshopper's officers are located in the Eastern District of New York.  *Id.* at ¶ 3.  The Court assumes for the sake of argument that Rambhia, although he lives in Cleveland, is subject to personal jurisdiction in the Eastern District of New York based on his working relationship as a member and manager of Grasshopper.  Venue is also proper because a substantial part of the events giving rise to the present action occurred in the Eastern District of New York, as Lewis conducted all negotiations with Vuori while Lewis was in New York.  Lewis

United States District Court
Northern District of California

1    Decl. ¶ 5.  Vuori does not address whether he could have brought suit in the Eastern District of

2    New York or argue that this requirement bars transfer.  *See* Opp'n at 14–16.

3                        **3.   Relevant Factors Do Not Favor Transfer**

4                              a.   Convenience of the Parties and Witnesses

5          Vuori states that it would be more convenient for him to litigate this case here, as he "ha[s]

6    responsibilities to [his] wife and young children and [his] work as a consultant for several San

7    Francisco-based startups" that "require [his] regular presence in the Bay Area."  Vuori Decl. ¶ 14.

8    Vuori also identifies several potential non-party witnesses located in California, *id.* at ¶¶ 5–7, 9,

9    but does not specify the relevance of their testimony, although they appear to be witnesses to the

10   investor related services that Vuori alleges he agreed to provide.  *See Hendricks*, 2014 WL

11   1245880, at * 3 ("In establishing inconvenience to witnesses, the moving party must name the

12   witnesses, state their location, and explain their testimony and its relevance." (quoting *Costco*

13   *Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007))).

14         Defendants contend that they would experience financial hardships as a result of traveling

15   to California to litigate this case here.  Lewis Decl. ¶¶ 6, 9; Rambhia Decl. ¶ 6.  Lewis also states

16   that traveling to California would impose a burden on him for health reasons.  Lewis Reply Decl.

17   ¶ 6 & Ex. 2.  Rambhia states that he would experience a hardship if he had to travel to litigate the

18   present matter here because it would impact his studies as a second-year medical student at Case

19   Western Reserve University School of Medicine.  Rambhia Decl. ¶ 5.  Concerning Grasshopper,

20   Defendants contend that litigating the case here would be inconvenient because the business

21   would have to shut down during any time Lewis was in California as and because all of its

22   documents, records, and files are located outside of California.  Lewis Decl. ¶¶ 6, 8.  Defendants

23   have also provided a declaration in which David Rhodes, a potential witness, states that traveling

24   to California would pose a hardship for him because he is a primary caregiver for his elderly

25   parents.  Rhodes Decl. ¶¶ 3, 5.

26         Taking into account that "[t]he convenience of non-party witnesses is a more important

27   factor than the convenience of party witnesses," *Hendricks*, 2014 WL 1245880, at *3 (citation

28   omitted), this factor does not favor a change of venue.

United States District Court
Northern District of California

35

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

b.   Interests of Justice

"In evaluating the interest of justice, a court may consider 'public interest factors such as court congestion, local interest in deciding controversies, conflicts of laws, and burdening citizens in an unrelated forum with jury duty." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1096 (N.D. Cal. 2013) (citations omitted).  While neither party has addressed these factors in their moving papers in any meaningful way, none of the factors support transfer.

According to United States Courts statistics from September 2017, the Eastern District of New York had 12,681 cases pending, and the Northern District of California had 9,127 cases pending.  The median times from filing to disposition and filing to trial for civil cases are 7.2 months to 24.8 months, respectively, in the Northern District of California, and 9.2 months and 38.1 months, respectively, in the Eastern District of New York.[4]  "The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."  *Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984).  Accordingly, this factor weighs against transfer.

Concerning local interest in deciding the present action, California has a greater interest in this dispute because the claims arise under California law.  *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1365 (N.D. Cal. 2007).  "Concurrent with the local-interest factor is the issue of burdening citizens of an unrelated forum with jury duty."  *Id.*  Because Vuori's claims arise under California law, this forum is related to the present action.  *Id.*  These factors also weigh against transfer.

No party has identified conflicts of law pertaining to this case.  Based on the issues of court congestion and local interests, the public interest as a whole weighs against transfer.

c.   Location Where Agreement Was Negotiated and Executed

This factor is neutral, as the parties in the present action negotiated the agreement in question in California, Ohio, and New York.  Lewis Decl. ¶ 5; Rambhia Decl. ¶ 3; Vuori Decl. ¶ 2.

---

[4] U.S. Dist. Courts—Combined Civ. & Crim. Fed. Ct. Mgmt. Statistics, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/09/30-1 (last visited Feb. 3, 2018).

United States District Court
Northern District of California

d.  State Most Familiar With Governing Law

Although some courts have concluded that "[a] California district court is more familiar with California law than district courts in other states," *Hendricks*, 2014 WL 1245990, at *5 (citations omitted), a number of courts have held that "[f]ederal courts have an equal ability to address claims arising out of state law." *E.g.*, *Bloom v. Express Servs., Inc.*, No. C 11-00009 CRB, 2011 WL 1481402, at *5 (N.D. Cal. Apr. 19, 2011). "District courts regularly apply the law of states other than the forum state." *Turrett Steel Corp. v. Manuel Int'l. Inc.*, 612 F. Supp. 387, 390 (W.D. Pa. 1985). Thus, "this factor is to be accorded little weight . . . because federal courts are deemed capable of applying the substantive law of other states." *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 261 (E.D.N.Y. 2010) (citation and internal quotation marks omitted). This Court may be a marginally better forum for Vuori's state law claims, but this factor is not particularly significant.

e.  Plaintiff's Choice of Forum

"Generally, the Court accords special weight to the plaintiff's choice of forum and the defendant 'must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'" *PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, No. C 05-2811 MMC, 2005 WL 2649206, at * 4 (N.D. Cal. Oct. 17, 2005) (quoting *Decker Coal*, 805 F.3d at 843). Although not dispositive, *see id.*, this factor weighs against transfer, as Vuori chose to litigate the present action in this District.

f.  The Respective Parties' Contacts with the Forum

As discussed above, Vuori is a California resident. Vuori Decl. ¶ 1. Lewis is a resident of New York, and Rambhia currently lives in Ohio. Lewis Decl. ¶ 2; Rambhia Decl. ¶ 2. Grasshopper is a limited liability company organized under the laws of Delaware with its offices in New York. Lewis Decl. ¶ 2. Lewis and Rambhia do not have property or offices in California. *Id.* ¶¶ 4, 9; Rambhia Decl. ¶¶ 4, 6. Grasshopper does not have any offices, employees, or registered agents for service of process in California. Lewis Decl. ¶ 3. As described above, however, Defendants have contacts with the forum in that they purposefully availed themselves of the benefits of conducting business in California when they sought Vuori's services as an advisor.

United States District Court
Northern District of California

1    Accordingly, this factor on balance weighs against transfer.

2                    g.   The Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum

3         Vuori states that he negotiated with Defendants concerning his role as an advisor for

4    Grasshopper in California and that he performed most of his services as an advisor here.  Vuori

5    Decl. ¶¶ 2, 13.  In his role as an advisor for Grasshopper, he also states that he facilitated many

6    introductions to potential investors and financial institutions in California on behalf of Defendants.

7    Vuori Decl.  ¶¶ 3–6, 9.  As also described above, Defendants negotiated with Vuori from New

8    York and Ohio.  Lewis Decl. ¶ 13; Rambhia Decl. ¶ 3.  Because Vuori both negotiated with

9    Defendants and performed his work for Grasshopper in this District, this factor slightly weighs

10   against transfer.

11                    h.   The Differences in the Costs of Litigation in the Two Forums

12        As described above, Defendants have stressed that they will experience financial hardships

13   associated with litigating this case in California.  These costs include: (1) travel costs; (2)

14   evidentiary costs, as Grasshopper's files, records, and documents are not located in California; and

15   (3) costs associated with hiring local counsel in California.  Lewis Mot. Decl. ¶¶ 6, 8, 9; Rambhia

16   Decl. ¶ 6.

17        This factor does not support transfer.  In terms of travel costs, if Rambhia is required to

18   appear for the present action, he will have to incur travel costs to appear at either forum.  If the

19   present action is transferred to the Eastern District of New York, Vuori will incur travel costs,

20   which would do nothing more than "simply reduce [Lewis's] litigation costs while increasing

21   [Vuori's] litigation costs.  *Hendricks*, 2014 WL 1245880, at *5.  As mentioned above, both parties

22   have named potential witnesses within or at least somewhat near each district.  As to evidentiary

23   costs regarding Grasshopper's files, documents, and records, "the fact that records are located in a

24   particular district is not sufficient to support a motion for transfer."  *Benson v. JPMorgan Chase*

25   *Bank, N.A.*, Nos. C-09-5272, C-09-5560 (EMC), 2010 WL 1445532, at *6 (N.D. Cal. Apr. 7,

26   2010) (quoting *Royal Queentex*, 2000 WL 246599, at *7).  With respect to costs associated with

27   hiring local counsel, Vuori would have to hire local counsel in New York, meaning that the

28   burden "would merely shift" to Vuori "rather eliminate the inconvenience" entirely.  *Hendricks*,

2014 WL 1245990, at *4 (quoting *Costco Wholesale*, 472 F. Supp. 2d at 1195).  This factor is therefore effectively neutral.

> i.  Availability of Compulsory Process

This factor weighs against transfer.  As discussed above, the parties have identified potential non-party witnesses who are located in California, New York, and Canada.  This Court would be able to compel the presence of potential witnesses Vuori has identified in the Bay Area because those witnesses reside or are employed within 100 miles of this Court.  *See* Fed. R. Civ. P. 45.  The non-party witnesses that Defendants have mentioned, however, are not subject to the same authority of the Eastern District of New York.  Rhodes, who lives in Rochester, New York, is more than 100 miles away from the Eastern District, and is subject only to a limited subpoena power.  *See* Fed. R. Civ. P. 45(c)(1)(B).  Similarly, Matt Golden, who Defendants also mention as a potential non-party witness, lives in Toronto, Ontario, and is therefore not subject to compulsory process by the Eastern District of New York.  *See id.*

> j.  Ease of Access to Sources of Proof

As discussed above, Defendants have stated that Grasshopper's documents, records, and files are not located in California.  Defendants do not contend, however, that the relevant documents are so voluminous that it would be difficult for them to be transported as needed or transmitted in digital form.  *See PRG-Schultz*, 2005 WL 2649206, at *5 (citation omitted); *see also Hendricks*, 2014 WL 1245880, at *5 ("[C]ourts have stated that the transportation of documents generally is not regarded as a burden because of technological advances in document storage and retrieval." (citations omitted)).  At most, this factor favors transfer only slightly.

* * *

Many factors in the present case are neutral.  Convenience to third party witnesses, Vuori's contacts with California, his choice of forum, and the Court's availability of compulsory process weigh against transfer, as well as perhaps the Court's familiarity with governing law.  On the whole, the Court finds that the relevant factors weigh against transferring this case to the Eastern District of New York.

1

## IV.    CONCLUSION

2       For the foregoing reasons, Defendants' motion to dismiss or transfer venue is DENIED.

3       **IT IS SO ORDERED.**

4    Dated: February 22, 2018

5    _____

6    JOSEPH C. SPERO
     Chief Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California